**BASS ANGLERS SPORTSMAN'S SO-
CIETY OF AMERICA et al.**

v.

**U. S. PLYWOOD–CHAMPION PAPERS,
INC., et al.**

**C. A. No. 70–H–1004.**

United States District Court,
S. D. Texas,
Houston Division.

Feb. 10, 1971.

L. A. Greene, Jr., Houston, Tex., for plaintiffs.

C. E. Nadeau, Legal Dept., Shell Chemical Co., Ben H. Rice, Vinson, Elkins, Searls & Smith, Kenneth R. Wynne, Joe Jaworski, Bracewell & Patterson, Houston, Tex., Robert W. Alexander, McCleod, Alexander, Powel & Apffel Galveston, Tex., Jack Shepherd, Asst. U. S. Atty., Houston, Tex., F. William Colburn, Asst. City Atty., City of Houston, Houston, Tex., Levin & Dees, Montgomery, Ala., George Rice, Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

SEALS, District Judge.

With the rarest of exceptions, the progress of man has been tarnished by the gradual degradation of his ecological environment. Our surroundings have been subjected to a continuous effluent of pollutants; scenic and recreational resources have been blighted and despoiled—in many instances, obliterated; species have been ignominiously driven into extinction, while a growing number of other endangered species await the same fate. Only recently has man begun to appreciate the extent of the damage he has wrought by his irresponsible tampering with the interdependent complex of climatic, edaphic and biotic processes that act upon all organisms, and ultimately determine their form and survival. There is a growing realization that the ecological scales are in danger of being so uncontrollably tipped, if they have not already been so disturbed, that all life forms, including man, the architect of this destruction, will perish. This environmental crisis has generated popular demand that the accelerating trend of environmental degradation be abated and, where feasible, reversed.

The efforts of most private citizens concerned with the preservation of environmental quality have been directed toward the legislative and executive branches of federal, state and local governments including the myriad of relevant administrative agencies. But many environmentalists, dissatisfied with the efforts of these governmental bodies, have sought judicial relief, oftentimes instituting suit against the very governmental agencies charged with the responsibility of protecting the interests of the public in these matters. Such is the nature of the present suit.

The plaintiffs, Bass Anglers Sportsman's Society of America, describing itself as a society composed of some 11,000 members, and the Baytown Bass Club, describing itself as an organization in Baytown, Texas, are special interest groups apparently dedicated to achieving the abatement of water pollution. Seeking injunctive relief, as well as damages, plaintiffs have instituted this civil suit against a number of alleged industrial polluters of Texas waterways and against the Secretary of the Army and the Chief of Engineers of the U. S. Army Corps.

The legal theories presented by the recent surge of environmental quality suits have been quite diverse, ranging from grandiose claims of the right of the general populace to enjoy a decent environment [e. g. Environmental Defense Fund, Inc. v. Hoerner Waldorf, Civil No. 1694 (D.Mont. filed Nov. 13, 1968); Fairfax County Fed'n of Citizens Ass'ns v. Hunting Towers Operating Co., Civil No. 4963-A (E.D.Va., filed Oct. 1, 1968)], an embryonic concept which perhaps offers environmentalists the greatest promise (see, note, 56 Virginia L.Rev. 458 (1970), to less ambitious and more narrow assertions that the citizenry can obtain judicial direction that governmental agencies meet procedural requirements. *E. g.*, D.C. Federation of Civic Associations, Inc. v. Airis, 129 U.S.App.D.C. 125, 391 F.2d 478 (1968) (failure to have public hearings). One commentator has suggested that only the public trust doctrine has the "breadth and substantive content which might make it useful as a tool of general application for citizens seeking to develop a comprehensive legal approach to resource management prob-

lems." Sax, The Public Trust Doctrine in Natural Resource Law: Effective Judicial Intervention, 68 Mich.L.Rev. 471, 474 (1970). The legal theory of the plaintiffs in the present suit is that they have the right to prosecute a *qui tam* action pursuant to Sections 407 and 411 of Title 33, U.S.C., to obtain an injunction prohibiting the industrial defendants from dumping refuse into Texas waterways without a permit in violation of § 407, to obtain penalties provided by § 411 for each such violation of § 407, and to obtain an injunction requiring defendant Stanley R. Resor, Secretary of the Army, and defendant Frederick J. Clark, Chief of Engineers, United States Army Corps of Engineers, to establish standards for the issuing of permits allowing the dumping of refuse into navigable waterways and tributaries of navigable waterways in the State of Texas and to apply these standards, once formulated, to anyone desiring to dump refuse into those navigable Texas waterways protected by 33 U.S.C. §§ 407 and 411. The plaintiffs have stated their cause of action no broader than §§ 407 and 411 of Title 33, U.S.C. Thus, plaintiffs must establish that they may, by this civil action, sue to enforce sections 407 and 411, or else the action must be dismissed for failure to state a claim upon which relief can be granted.

Section 407 of Title 33, U.S.C., is a part of the Rivers & Harbors Act of 1899 [March 3, 1899, c. 425, § 13, 30 Stat. 1152], and its provisions are as follows:

It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed: Provided, That nothing herein contained shall extend to, apply to, or prohibit the operations in connection with the improvement of navigable waters or construction of public works, considered necessary and proper by the United States officers supervising such improvement or public work: And provided further, That the Secretary of the Army, whenever in the judgment of the Chief of Engineers anchorage and navigation will not be injured thereby, may permit the deposit of any material above mentioned in navigable waters, within limits to be defined and under conditions to be prescribed by him, provided application is made to him prior to depositing such material; and whenever any permit is so granted the conditions thereof shall be strictly complied with, and any violation thereof shall be unlawful.

Section 411 of Title 33, U.S.C., provides for the following penalties for violations of section 407:

Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, and 409 of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, in the discretion of the court, one-half of said fine to be

paid to the person or persons giving information which shall lead to conviction.

Section 413 of 33 U.S.C. provides that "[t]he Department of Justice shall conduct the legal proceedings necessary to enforce the provisions of sections * * * 407 * * * 411 * * * of this title; and it shall be the duty of United States attorneys to vigorously prosecute * * *."

Clearly, §§ 407 and 411 are solely criminal statutes. Section 411 makes the acts proscribed in § 407 "misdemeanor" offenses and provides that upon "conviction" of such offense the convicted person or corporation shall be "punished" by "fine" or "imprisonment." See, Shipman v. United States, 309 F. Supp. 441 (D.C.E.D.Va.1970). Nothing in these statutes intimates that a civil enforcement procedure is authorized. Under these circumstances, these sections cannot be enforced by a civil action. United States v. Claflin, 97 U.S. 546, 24 L.Ed. 1082 (1878).

▪▪▪ Section 413, Title 33, U.S.C., provides that the Department of Justice "shall conduct the legal proceedings necessary to enforce the provisions of section * * * 407". No room remains for implying that any others may sue to enforce these statutes. In the exercise of its responsibility for the prosecution of federal crimes, neither private citizens, the legislature nor the judiciary may interfere. E. g., United States v. Cox, 342 F.2d 167 (5th Cir. 1965); Smith v. United States, 375 F.2d 243 (5th Cir. 1967). Thus, plaintiffs may not take it upon themselves to obtain convictions under §§ 407 and 411.

The plaintiffs' theory of course is that they may maintain the suit under §§ 407 and 411 as a *qui tam* action. A *qui tam* action, or action by common informer, has been defined as a civil proceeding brought "under a statute which imposes a penalty for the doing or not doing an act, and gives that penalty in part to whomsoever will sue for the same, and the other part to the commonwealth, or some charitable literary, or other institution, and make it recoverable by action." Bouvier's Law Dictionary (3d ed). The action's appellation comes from the Latin phrase "qui tam pro domino rege quam pro se imposo sequitur," meaning "who brings the action as well for the king as for himself." In 1905 the Supreme Court of the United States observed in Marvin v. Trout, 199 U.S. 212, 225, 26 S.Ct. 31, 34, 50 L. Ed. 157 that:

> Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence * * * in this country ever since the foundation of our government.

In 1943 the Court again recognized that "*Qui tam* suits have been frequently permitted by legislative action * * *" United States ex rel. Marcus v. Hess, 317 U.S. 537, 541 63 S.Ct. 379, 383, 87 L.Ed. 443. Plaintiffs have cited a number of federal statutes which presently authorize *qui tam* proceedings by the common informer.

The plaintiffs assert that the provision in § 411 that one-half of the fine imposed for violating § 407 is "to be paid to the person or persons giving information which shall lead to conviction" is to be understood as a Congressional authorization of *qui tam* actions to enforce the Act. Although § 411 does not specifically authorize the *qui tam* action, plaintiffs argue that it does not specifically deny the action either and under these circumstances should be construed to impliedly authorize such a suit. Plaintiffs cite Justice Black's dictum in United States ex rel. Marcus v. Hess, 317 U.S. 537, 541, fn. 4, 63 S.Ct. 383, wherein he stated:

> Statutes providing for a reward to informers which do not specifically either authorize or forbid the informer

to institute the [*qui tam*] action are construed to authorize him to sue.

Justice Black's dictum would appear to state the law too broadly. The *qui tam* action depends entirely upon statutory authorization, as it has never found its way into the common law. The action arises only upon a statutory grant. The fact that someone is entitled by statute to share in some penalty or forfeiture does not necessarily also give such person the right to bring an original action to recover such penalty or forfeiture. There must be statutory authority, either express or implied, for the informer to bring the *qui tam* action. When the statute is silent as to whether the *qui tam* action is authorized, and nothing can be gleaned concerning congressional intent from the circumstances surrounding the passage of the statute then perhaps Justice Black's construction in favor of the *qui tam* action may be justified in many instances. But Black's construction obviously is inappropriate whenever the statute's language, by necessary implication, precludes such a conclusion.

The Rivers and Harbors Act of 1899 contains no express statutory authority for the *qui tam* action. To the contrary, the language of § 411 of the Act by necessary implication rules out the *qui tam* proceeding, for the statute provides that the informer is entitled to part of the fine only upon the conviction of the person or corporation accused of violating § 407. Without such a conviction, no fine can be imposed in which the informer can share. The informer's rights depend upon (1) a criminal proceeding being brought under § 411; (2) a conviction being obtained in the criminal proceeding; and, (3) the convicting court imposing the fine as punishment for the offense. The informer's rights therefor are entirely dependent upon and inseparable from the criminal proceeding brought by the Department of Justice, the party authorized to institute such suit. Clearly, then, the *qui tam* civil action is not authorized.

■ Nor may plaintiffs proceed in this suit to compel the Secretary of the Army and the Chief of Engineers, United States Army Corps of Engineers, to set standards to require permits under the provisions of 33 U.S.C. § 407. The "Refuse Act" contains no statutory mandate which requires these defendants to develop and implement a set of pollution standards governing emissions into the navigable waters. Section 407 states that the Secretary of the Army, when the Chief of Engineers is in agreement, *may* permit the deposit of refuse into navigable waters, within limits to be defined and under conditions to be prescribed by him. There is no implication that the Secretary of the Army or Chief of Engineers must act except when a permit has been applied for, and then it is clear that the conditions to be prescribed are to relate only to the particular permit for which the applicant seeks. Section 419 of Title 33, U.S.C., does specifically refer to § 407 and authorizes the Secretary of the Army to develop a permit system. The relevant portions of § 419 are as follows:

> The Secretary of the Army *is authorized and empowered to prescribe regulations* to govern the transportation and dumping into any navigable water, or waters adjacent thereto, of dredgings, earth, garbage, and other refuse materials of every kind or description, *whenever in his judgment such regulations are required* in the interest of navigation.

*Emphasis added.*

Although § 419 is adequate authority for the Secretary of the Army to develop and implement general standards for a permit system, it in no manner commands him to do so. His decision as to whether or not to promulgate such regulations must be considered discretionary. Because the Secretary of the Army and the Chief of Engineers, United States Army Corps of Engineers, have no legal duty to set comprehensive standards and require permits under the provisions of

§ 407, this court has no authority to direct them to do so. McWhorter v. Kennedy ex rel. Settle, 324 F.2d 793 (8th Cir. 1963); Hudgins v. Circuit Court of Chesapeake, Virginia, 294 F.Supp. 258 (E.D.Va.1968). Accordingly, the plaintiffs have stated no claim against these two governmental officials upon which relief can be granted.

The court is also persuaded that it lacks jurisdiction over the person of the two governmental defendants named in this suit. Unless acting illegally under the statutory authority vested in them, or unless the statutes under which they are acting are unconstitutional, these governmental defendants, as agents and officers of the United States of America, are protected by the doctrine of sovereign immunity. Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962). Plaintiffs make no material allegation that these governmental officers exceeded their authority and, of course, do not seek to have the statutes under which they are acting declared unconstitutional.

The question posed earlier—whether plaintiffs may by this civil action sue to enforce §§ 407 and 411 of Title 33, U.S. C.—having been answered in the negative, it must also be concluded that plaintiffs have failed to state a claim upon which relief may be granted. For this reason, and because the court lacks jurisdiction over the Secretary of the Army and the Chief of Engineers, United States Army Corps of Engineers, the case must be dismissed. Sections 407 and 411 of Title 33, U.S.C., may not, in their present form, be added to the public's growing arsenal of judicially recognized causes of action in its continuing struggle to obtain the abatement and reversal of environmental degradation by court action. The court so orders.

Counsel for defendants are directed to submit an appropriate judgment.