UNITED STATES of America ex rel. June E. SMITH, Plaintiffs,

v.

GILBERT REALTY CO., INC. and Howard Burgess, jointly and severally, Defendants.

Civ. A. No. 92–CV–40481–FL.

United States District Court, E.D. Michigan, S.D. at Flint.

Dec. 9, 1993.

Christopher W. Pasini, Legal Services of Eastern Michigan, Flint, MI, Terri L. Stangl, Legal Services of Eastern Michigan, Saginaw, MI, for plaintiffs.

James C. Dillard, Flint, MI, for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Pending before the Court is the issue of damages under the federal False Claims Act ("the Act"). Oral argument was heard on December 3, 1993.

In this Court's Order of July 27, 1993, it granted Plaintiff summary judgment as to liability under this count. Defendant's arguments to the contrary at oral argument were unsupported. The Court has found that Defendant violated the False Claims Act 58 times: by making 7 statements to the local housing authority, and by endorsing 51 rent checks, each governed by a contract that stated an endorsement constitutes certification of non-receipt of additional rent beyond the amount allowed.

In the November 1993 Order granting partial summary judgment, the Court found Defendants liable for $4,890 in trebled actual damages, and it now must determine the amount owed under the statutorily mandated civil penalties. 31 U.S.C. § 3729(a)(7).

First, however, the Court must resolve a preliminary matter.

### I. Order to Show Cause

In the Order of July 27, 1993, the Court ordered Defendants to respond by July 23, 1993 on the issue of damages under the False Claims Act and liability under the Michigan Consumer Protection Act. While the deadline was obviously impossibly short, Defendant's counsel, Mr. Dillard, did not contact the Court or file a brief until October 8, 1993, one month after Plaintiff had filed a motion for final judgment as to the False Claims Act issue. Moreover, his brief ignored the Michigan Consumer Protection Act issue. As of today, defendant's counsel has still failed to file a brief responding to liability under the Michigan Act.

In spite of defendant's counsel inexplicable failure to respond in a timely fashion, the Court is uncomfortable imposing a sanction in a case where its own order was in error. Therefore, no sanction is imposed.

### II. Civil Penalties Under the False Claims Act

#### A. Statutory Issues

Defendants contend that the Act provides the Court with authority to apply the civil penalties in a discretionary manner. They cite one case where the court upheld the award of a penalty less than the amount warranted by the Act. *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir.), *cert. denied, sub nom. Peterson v. Mathews*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975). Defendants admit however that the *Peterson* case is a lone wolf, and that no other case supports the proposition that the statute provides discretion to award less than the minimum $5,000 in civil penalties per violation.

In any event, following *Peterson*, the Act was amended by the False Claims Amendments Act of 1986, Pub.L. 99–562, 100 Stat. 3153 (1986) ("1986 Amendments Act"). The relevant language in the Act reads as follows:

§ 3729. **False claims**

(a) **Liability for certain acts.**—Any person who—

(1) knowingly presents, or causes to be presented, . . . a false or fraudulent claim for payment or approval . . .

is liable to the United States Government for a civil penalty of not less than $5,000 . . .

31 U.S.C.A. § 3729 (West 1993 pocket part).

The key words are "is liable" and "not less than." It seems plain that the Act requires a civil penalty each time the violation occurs.

Any doubt as to the language is resolved by the legislative history of the 1986 Amendments Act. The Senate bill was passed in the 1986 Amendments Act, and the report of the Senate Judiciary Committee clearly states that "The Committee reaffirms the apparent belief of the act's initial drafters that defrauding the Government is serious

enough to warrant an automatic forfeiture rather than leaving fine determinations with district courts, possibly resulting in discretionary nominal payments." S.Rep. No. 99–345, 1986 U.S.C.C.A.N. 5266, 5282.

An interpretation of the Act that limited the mandatory penalty to $5,000 per person regardless of the number of violations would also contradict the intent of the drafters of the 1986 Amendments Act to provide more vigorous enforcement of the Act. *Id.* at 5266–67. The drafters of the 1986 Amendments Act believed that the rule under the Act prior to the Amendment was that, "The False Claims Act currently permits the United States to recover double damages plus $2,000 for each false *claim.*" *Id.*, at 5269 (emphasis added). It is unlikely that the drafters would have increased the amount of the penalty from $2,000 to $5,000, but only required the $5,000 to be imposed once per person regardless of the number of false claims. They certainly would not have done so without discussing that issue in the legislative history.

Nonetheless, *Peterson* was cited in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) as an example of a case of "imposing less than [the] full civil sanction authorized by [the] False Claims Act when the full sanction would be unreasonable and not remotely related to actual loss." 490 U.S. at 450, 109 S.Ct. at 1902. The Court used the citation to support the principle that in a *constitutional* review of a False Claims Act case, "We must leave to the trial court the discretion to determine on the basis of such an accounting the size of the civil sanction the Government may receive without crossing the line between remedy and punishment." *Id.*

The Court clearly intended district courts to apply their discretion in the adjudication of constitutional questions involving the applicability of the False Claims Act. Therefore, this Court next considers constitutional issues.

### B. Constitutional Challenges to Civil Penalties

Defendants offer two constitutional challenges to the imposition of a civil penalty. They claim a due process violation, and they also claim a violation of the Excessive Fines Clause ("the Clause") of the Eight Amendment.

#### 1. *Due Process*

■ The due process claim is procedural. Defendants argue that because the fine is essentially punishment, it requires the standards of a criminal jury trial to impose the fine. There is no support for this argument, and it loses.

#### 2. *Excessive Fine Under the Eighth Amendment*

Defendants also contend that the statutorily mandated civil penalties constitute an excessive fine under the Eighth Amendment's Excessive Fines Clause ("Clause") and is therefore unconstitutional.

##### a. *Does the Excessive Fine Clause Apply?*

The United States Supreme Court has expressly left open the issue of whether the Excessive Fines Clause applies in a *qui tam* case. *Browning–Ferris v. Kelco Disposal,* 492 U.S. 257, 276 n. 21, 109 S.Ct. 2909, 2920 n. 21, 106 L.Ed.2d 219 (1989). In that case, the Court held that the Clause does not apply to punitive damages in a case between private parties. *Id.* The Court has also held that the Clause does apply to a drug-related civil forfeiture action brought by the United States under 21 U.S.C. § 881(a)(4) & (a)(7) (1992), *Austin v. United States,* 509 U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

In *Austin,* the Court rejected the arguments by the government that the Excessive Fines Clause was limited to criminal proceedings. 509 U.S. at ——, 113 S.Ct. at 2805, 125 L.Ed.2d at 497. "The purpose of the Eighth Amendment, putting the Bail Clause to one side, was to limit the government's power to punish. *See Browning–Ferris,* 492 U.S., at 266–267, 275, [109 S.Ct. at 2915–2916, 2920] ... The Excessive Fines Clause limits the Government's power to extract payments, whether in case or in kind, 'as punishment for some offense.' *Id.*, at 265 [109 S.Ct. at 2915] (emphasis added)." *Austin,* 509 U.S. at ——, 113 S.Ct. at 2805, 125 L.Ed.2d at 497.

" 'It is commonly understood that civil proceedings may advance punitive and remedial goals, ...' " *Id.,* (quoting *United States v. Halper,* 490 U.S. 435, 447–448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989). " '[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.' " *Austin,* 509 U.S. at ——, 113 S.Ct. at 2806, 125 L.Ed.2d at 498 (quoting *Halper,* 490 U.S. at 448, 109 S.Ct. at 1902).

*Halper* concerned the application of the Double Jeopardy Clause to the False Claims Act. The Court stated:

> What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as punishment in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and to determine if the penalty sought in fact constitutes a second punishment.

*Halper,* 490 U.S. at 449, 109 S.Ct. at 1902.

■ In *Halper,* the issue was double jeopardy. Here, the issue is "excessive fines." Nonetheless, the reasoning is similar. The fine appears to qualify as punishment, given its proportional relationship to the excessive rent charged, and the relator makes no claim that it constitutes compensation. That this matter is civil and not criminal is not dispositive. *Id.,* 490 U.S. at 447, 109 S.Ct. at 1901 ("It is commonly understood that civil proceedings may advance punitive as well as remedial goals, ...")

This *qui tam* action is brought in the name of the United States by a private party. The Government will share in the proceeds. The amount that Defendant owes under the civil penalty provision if the statutory minimum of $5,000 per violation is assessed, is 58 times $5,000 = $290,000. Given the low level of actual damages, under $2,000, the $290,000 figure constitutes punishment under the language used by the Court in *Halper, Browning-Ferris,* and *Austin,* and it is therefore appropriate for the Court to consider whether this punishment is excessive.

### b. *Standard of Excessiveness*

In *Austin,* the Court instructed the lower court to determine a standard for the application of the excessive fine provision to the forfeitures. In his concurrence, however, Justice Scalia noted that the determination of what constitutes an *excessive* fine under the forfeiture statutes would differ from a monetary fine, where the "touchstone is value of the fine in relation to the offense." 509 U.S. at ——, 113 S.Ct. at 2815, 125 L.Ed.2d at 509 (Scalia, J., concurring).

The Court has applied similar reasoning in the due process review of excessive punitive damage awards. *TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. ——, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) ("We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that [a] general concer[n] of reasonableness ... properly enter[s] into the constitutional calculus.' ") *TXO,* 509 U.S. at ——, 113 S.Ct. at 2720, 125 L.Ed.2d at 379 (quoting *Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1, 18, 111 S.Ct. 1032, 1043, 113 L.Ed.2d 1 (1991).

■ In the case at bar, this Court found actual damages of $1,630. The civil penalty is $290,000. This ratio is approximately 1:178. That relationship suggests that some portion of the penalty is excessive. The degree of excessiveness is not determined by application of a three prong test, or any other similar test that the Court normally has available to it in similar matters. Nonetheless, the decision need not be without standards.

One way to consider what proportion of this award is excessive is to examine the nature of the conduct, rather than simply

adopting a mathematical proportion. In this case, for instance, the defendant faces a penalty of $255,000 for endorsing the 51 rent checks.

One does not normally expect a landlord to consider the terms of the rental agreement for an inexpensive residential apartment each time a rent check is cashed. The cashing of the rent check is a certification only as a result of the contract with the housing authority. While that is sufficient to impose liability under the statute, the Court finds the penalty for the cashing of the checks to be extremely harsh and unjust.

On the other hand, defendants actually made seven certifications to the housing authority directly that were false claims in every sense of the word. These seven acts clearly warrant imposition of the $5,000 civil penalty apiece.

The Court therefore finds that any civil penalty above $35,000 is excessive and violates the Eighth Amendment of the United States Constitution.

*SO ORDERED.*