**UNITED STATES of America, ex rel. June E. SMITH, Plaintiffs,**

**v.**

**GILBERT REALTY CO. and Howard Burgess, Defendants.**

**Civil Action No. 92–40482.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 10, 1998.

Christopher W. Pasini, Legal Services of Eastern Michigan, Flint, MI, Terri L. Stangl, Legal Services of Eastern Michigan, Saginaw, MI, for Plaintiff.

James C. Dillard, Neithercut, Klapp, Flint, MI, for Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART QUI TAM PLAINTIFF'S MOTION FOR PAYMENT OF HER FULL RELATOR'S SHARE OF THE JUDGMENT AND ATTORNEY'S FEES

GADOLA, District Judge.

June E. Smith (hereinafter "relator") filed this False Claims Act action against Gilbert Realty and Howard Burgess in October, 1992. On December 16, 1992, the government filed a notice declining to intervene. On February 3, 1994, the court (Stewart Newblatt presiding) entered a final judgment against the defendants for $54,140, including $39,890 in damages and civil penalties (30% of which was payable to the relator being $11,967, and with 70% payable to the United States) and $13,250 in reasonable attorney's fees and costs payable to the relator's attorney, Legal Services of Eastern Michigan.[1]

---

1. To date, post-judgment interest in the amount of $2,152.41 has accrued on the damages and civil penalties portion of the judgment due to the relator bringing that total to $14,119.41, while

On March 10, 1998, the United States, without notice to the relator filed a "Satisfaction of Judgment Against Howard Burgess Only" stating that the entire $53,140 judgment plus interest had been paid by compromise. The compromise amount was $18,000 and the United States offered the relator 30% of that amount or $5,400.[2] Because collection from the remaining defendant, Gilbert Realty Co., Inc., seems unlikely[3] and because the United States entered into the Satisfaction without prior notice to or the consent of the relator or her attorney, the relator filed a motion to have the United States forthwith pay the relator's 30% share of the $39,890 judgment and $13,250 attorney fee award plus interest. A hearing on the motion was held on August 6, 1998.

For the reasons set forth below, this court will order the United States to forthwith pay $14,119.41 to the relator, June Smith, and $3880.59 to Legal Services of Eastern Michigan. This court will also entertain supplemental motions on the issue of whether the United States should pay $11,752.58 to Legal Services of Eastern Michigan as a penalty for their conduct.

### QUI TAM ACTIONS

The False Claims Act provides that any person can bring a civil action for a violation of the substantive provisions of the Act "for the person and for the United States government." 31 U.S.C. § 3730. Such actions are referred to as "qui tam" actions, the term being short for "qui tam pro domino rege quam pro se imposo sequitur," which means "who brings the action as well for the king as for himself." *Bass Anglers Sportsman's Soc. of America v. U.S. Plywood–Champion Papers, Inc.*, 324 F.Supp. 302, 303 (S.D.Tex. 1971).

Upon bringing a qui tam action, a relator must serve on the government a copy of the complaint and written disclosure of substantially all material evidence and information the relator possesses. The complaint must be filed in camera and remain under seal for at least 60 days so that the government may investigate the relator's allegations, though upon a showing of 'good cause' the government may move the court for extensions of the 60 day period. *Id.* [31 U.S.C.] § 3730(b)(2), (3). By the end of the period provided for the government's investigation, the government must decide whether to intervene and proceed with the action, 'in which case the action shall be conducted by the Government,' *id.* § 3730(b)(4)(A), or whether to decline to take over the action 'in which case the person bringing the action shall have the right to conduct the action.' *Id.* § 3730(b)(4)(B).

The Act explicitly provides that if the government takes over the qui tam action from the start, 'it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action.' *Id.* § 3730(c)(1). Though the relator 'shall have the right to continue as a party,' *id.*, the government may end the litigation or limit the participation of the relator in several ways. First, the government may dismiss the action 'notwithstanding the objections of the person initiating the action' once the relator has received notice and an opportunity for a hearing on the dismissal motion. *Id.* § 3730(c)(2)(A). Second, the government may settle with the defendant 'notwithstanding the objections of the person initiating the action,' but only if the court determines after a hearing 'that the proposed settlement is fair, adequate, and reasonable under all the circumstances.' *Id.* § 3730(c)(2)(B). Third, the government may request that the court impose appropriate limitations on the relator's participation if it shows that unrestricted participation 'would interfere with or unduly delay the Government's prosecution of

---

interest in the amount of $2,383.17 has accrued on the attorney's fees and costs portion of the judgment, bringing that total to $15,633.17.

**2.** Apparently, Howard Burgess tendered a certified check for $18, 000 to the government and that check was subsequently lost, and thus never cashed. Howard Burgess since has tendered a second certified check for $18,000, which remains in escrow today.

**3.** All parties agree that Gilbert Realty Company is uncollectible.

the case, or would be repetitious, irrelevant, or for purposes of harassment.' *Id.* § 3730(c)(2)(C). The Act also provides the defendant an opportunity to request that the court limit the relator's participation, upon a showing that unrestricted participation 'would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense.' *Id.* § 3730(c)(2)(D).

When the government chooses not to take over a qui tam action, the relator 'shall have the right to conduct the action.' *Id.* § 3730(c)(3). Upon the government's request, however, the relator must serve the government with all copies of all pleadings and deposition transcripts. Whether or not the government takes over the action from the outset, it may ask the court to stay the relator's discovery for an extendable 60–day period, upon a showing that the relator's discovery 'would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts.' *Id.* § 3730(c)(4).

In cases where the government initially elects not to take over the action, the court 'may nevertheless permit the Government to intervene at a later date upon a showing of good cause.' *Id.* § 3730(c)(3). In permitting late intervention, the court may not limit 'the status and rights' of the relator. *Id.*

*United States v. Boeing Company,* 9 F.3d 743, 746 (9th Cir.1993).

### ANALYSIS

The relator, June Smith, and her counsel, Legal Services of Eastern Michigan, contend that by settling the judgment for an amount significantly less than the judgment without notice to either the relator or her attorney, the United States has compromised both their rights to full satisfaction of the judgment entered by Judge Newblatt. The relator and her counsel do not request that the settlement be set aside,[4] but rather they urge this court to penalize the United States for

its actions by ordering it to pay the relator and her counsel the full amount to which each are entitled under the judgment, plus interest.

The United States believes that it has committed a "harmless error." The United States maintains that $18,000 was the most money that can be obtained from Howard Burgess, and therefore the settlement was appropriate. As a conciliatory measure, the United States has agreed to pay the full $18,000 settlement to the relator and her attorney, so that they can divide it up as they choose.

This court finds that by settling the judgment without notice to either the relator or her counsel, the United States has perpetrated a gross injustice on them. It was an egregious oversight on behalf of the United States to settle the judgment in that fashion. The rights of the relator and her attorney have been severely violated. In fact, at the hearing in this matter, the United States conceded that it committed a "mistake" and a "gross oversight," and could offer no excuse for its action.

This court finds that the United States violated both the letter and spirit of The False Claims Act when it settled with Howard Burgess without giving prior notice to the relator or her attorney. First, the United States transgressed the express language of. The False Claims Act in two ways. The False Claims Act states that "the government may settle the action with the defendant notwithstanding the objections of the [relator] if the court determines, after a hearing that the proposed settlement is fair, adequate and reasonable under all the circumstances." 31 U.S.C. § 3730(c)(2)(B). Here, no notice was given to the relator prior to the settlement. Moreover, no hearing was held on the settlement to determine if it was equitable. The United States also violated The False Claims Act's requirement that leave of the court be obtained for a late intervention, and that intervention not limit the "the status and rights" of the relator. 31 U.S.C. § 3730(c)(3). No permission was

---

4. Since there has been no request that the settlement be set aside, this court will not consider or    order such a measure.

sought by the United States before intervention in this matter, and the intervention seemingly limited the relator's and her attorney's right to recover the full amount of the judgment.

Likewise, the settlement apparently violates the spirit of The False Claims Act. The relator, without any assistance from the government, obtained a judgment against the defendants. It would defeat the purpose of the Act if the government could undo that judgment by settling with one of the defendants. It would deter persons from pursuing such actions in the future.

For all the foregoing reasons, this court will order the United States to forthwith pay the relator and her attorney the $18,000 currently in escrow. In regard to how that money is to be divided, this court and the relator's counsel agree that the relator should be paid the full amount she is entitled to under the judgment first, with the remainder being paid to Legal Services of Eastern Michigan. Therefore, of the $18,000 currently in escrow, the United States should forthwith pay the relator $14,119.41 and her attorney $3880.59. This payment to the relator will fully satisfy her claim, including interest.

▆▆▆▆ The judgment entered herein awarded Legal Services of Eastern Michigan $13,250. When post-judgment interest at the statutory rate (28 U.S.C. § 1961) is added, the total amount of attorney's fees owed to Legal Services of Eastern Michigan is $15,-633.17. As stated above, the payment by the United States to Legal Services of Eastern Michigan is significantly less than the amount Legal Services is entitled to under the judgment. Legal Services of Eastern Michigan maintains that the United States should be ordered to pay the difference of $11,752.58 as a sanction for their violation of The False Claims Act. No authority, however, has been presented to this court which would allow for such a measure. Indeed, The False Claims Act seems to prohibit it. The False Claims Act states that the United States is not liable for the expenses of a person pursuing a qui tam action. 31 U.S.C. § 3730(f).

This court will not now decide the issue of whether the United States should pay Legal Services of Eastern Michigan as a sanction for settling the judgment without notice to the same. Instead, this court will defer ruling on the issue to allow the relator to file a supplemental brief on this issue should she desire.

### *ORDER*

**IT IS HEREBY ORDERED** that the motion of June Smith for the payment of her full relator's share is GRANTED. The United States forthwith shall pay relator June E. Smith, $14,119.41.

**IT IS HEREBY ORDERED** that the motion of June Smith for the payment of her attorneys' fees is GRANTED in part. The United States forthwith shall pay Legal Services of Eastern Michigan $3880.59.

**IT IS HEREBY ORDERED** that June Smith may file a supplemental brief no later than August 21, 1998, regarding the issue of whether the United States should pay Legal Services of Eastern Michigan a penalty. Should the relator chose to file such a brief, the United States shall file a response to the same no later than September 5, 1998.

**SO ORDERED.**