UNITED STATES of America, ex rel. June E. SMITH, Plaintiffs,

v.

GILBERT REALTY CO. and Howard Burgess, Defendants.

Civil Action No. 92–40481.

United States District Court, E.D. Michigan, Southern Division.

Oct. 28, 1998.

Order Imposing Sanctions Nov. 4, 1998.

Frank W. Hunger, Asst. Atty. Gen., Washington, DC, Saul Green, U.S. Atty. for the Eastern Dist. of Michigan, Jacqueline Hotz, Asst. U.S. Atty., Detroit, MI, for U.S.

Christopher Pasini, Dolores Coulter, Legal Services of Eastern Michigan, Flint, MI, for relator.

Kyle Riem, Grand Blanc, MI, for defendants.

*MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART QUI TAM PLAINTIFF JUNE SMITH'S MOTION REQUESTING FULL PAYMENT OF ATTORNEY'S FEES FROM THE UNITED STATES*

GADOLA, District Judge.

On August 10, 1998, this Court issued a memorandum opinion and order granting in part June Smith's motion for payment of her full relator's share of the judgment and attorney's fees. In that opinion, this Court stated that it would not decide at that time whether the United States should be required to pay in full Ms. Smith's attorney's fees. The August 10, 1998 memorandum opinion and order gave Ms. Smith additional time to submit a supplemental brief addressing the attorney's fees issue. On August 21, 1998, Smith's counsel, Legal Services of Eastern Michigan (hereinafter "LSEM"), filed a supplemental brief. On September 18, 1998, the United States filed its response to LSEM's supplemental brief. LSEM argues that the government should pay to it the remaining amount of its fees (i.e., $11,752.58) as a sanction for settling the judgment without providing notice to Ms. Smith or LSEM, as required under the False Claims Act (FCA). *See* 31 U.S.C. § 3730(c)(2)(B). Oral argument on the attorney's fees issue was heard by this Court on October 21, 1998

For the reasons set forth below, this Court will grant in part and deny in part qui tam plaintiff June Smith's motion requesting full payment of attorney's fees from the United States.

**I. Procedural History**

June E. Smith (hereinafter "relator" or "Ms. Smith") filed this False Claims Act action against Gilbert Realty and Howard Burgess in October 1992. On December 16, 1992, the government filed a notice declining to intervene. Pursuant to 31 U.S.C. § 3730(d)(2), a relator who brings a qui tam action without the government's assistance is entitled to between 25 and 30 percent of the settlement, plus reasonable attorneys' fees and costs to be paid by defendant. On February 3, 1994, applying section 3730(d)(2), the court (Stewart Newblatt, presiding) entered a final judgment against the defendants in the amount of $53,140. See *U.S. ex rel. Smith v. Gilbert Realty Co., Inc.,* 840 F.Supp. 71 (E.D.Mich.1993)(Newblatt, J.).

This sum of $53,140, appearing in the February 3, 1994 judgment, was arrived at in the following manner: the court found defen-

dants liable for seven civil penalties of $5,000 each or $35,000. To this amount was added treble damages in the amount of $4,890. Judge Newblatt then computed attorney's fees and costs to be paid to Legal Services of Eastern Michigan, including interest, in the amount of $13,250. Therefore, the total award was $35,000 plus $4,890, or $39,890, plus $13,250 in attorney's fees, for the grand total of $53,140. As mentioned above, relator was entitled by statute to as much as 30% of the judgment amount. *See* 31 U.S.C. § 3730(d)(2). Accordingly, Judge Newblatt directed 30% of the $39,890 to be paid to relator Smith (i.e., $11,967), with 70% to be paid to the United States.

After relator and her attorney had conducted the action without the assistance of the United States, the government accepted $18,000 from defendant Howard Burgess in full settlement of the February 3, 1994 judgment. At no time was relator given the opportunity to object to the settlement at a court hearing, as required under 31 U.S.C. § 3730(c)(2)(B). On March 10, 1998, the United States filed a "Satisfaction of Judgment Against Howard Burgess Only," stating that the entire $53,140 judgment plus interest had been paid by compromise. Subsequently, the United States offered the relator 30% of $18,000 (the compromise amount), or $5,400. Since collection from the remaining defendant, Gilbert Realty Co., Inc., seemed unlikely and because the United States entered into the Satisfaction without prior notice to or with consent from the relator or her attorney, the relator filed a motion to have the United States forthwith pay the relator's 30% share of the $39,890 judgment and $13,250 attorney fee award plus interest.

On August 10, 1998, this Court issued a memorandum opinion and order granting in part June Smith's motion for payment of her full relator's share of the judgment and at-

torney's fees. *See U.S. ex rel. Smith v. Gilbert Realty Co.,* 9 F.Supp.2d 800 (E.D.Mich.1998)(Gadola, J.). In that opinion, this Court awarded Ms. Smith $14,119.41, i.e., her full relator's share with interest. The Court further ordered the United States to pay Legal Services of Eastern Michigan the sum of $3,880.59, the difference between the relator's share and the full compromise amount of $18,000.[1] The Court did not decide whether the United States should be required to pay Ms. Smith's attorney's fees in full. Additional time was provided to Ms. Smith to submit a supplemental brief addressing the attorney's fees issue. LSEM argues that the government should pay to it the remaining amount of its fees plus interest (i.e., $11,752.58), as a sanction for settling the judgment without providing notice to Ms. Smith or to LSEM. *See* 31 U.S.C. § 3730(c)(2)(B).

## II. Analysis

LSEM bases its request for an award of attorney's fees on two grounds. First, LSEM argues that the fees should be awarded pursuant to Federal Rule of Civil Procedure 11, as a monetary sanction for the government's failure to comply with the Federal Claims Act (FCA). As discussed in this Court's August 10, 1998 memorandum opinion and order, the FCA requires that the government obtain the court's permission before settling the relator's claim without the relator's consent. *See* 31 U.S.C. § 3730(c)(2)(B). Second, LSEM asserts that this Court has the authority to award attorney's fees through the exercise of its equitable powers alone. As a preliminary matter, this Court must first address whether LSEM's request is barred by the False Claims Act itself. The Act explicitly prohibits holding the government liable "for expenses which a person incurs in bringing an

---

1. This Court's prior order directing payment of attorney's fees in no way implicates the statutory prohibition against the government being held "liable for expenses which a person incurs in bringing an action under this section." 31 U.S.C. § 3730(f). As will be discussed in this opinion, the False Claims Act prohibits such taxing of expenses (including attorneys' fees) against the government. The $3,880.59 to be paid to LSEM was *not* an expense assessed against the government, but rather an amount to be paid out of the compromise settlement already surrendered by defendant Burgess. The government voluntarily, and with an eye toward redressing its oversight, *consented* to the payment of the $14,119.41 to relator in full satisfaction of the original judgment, as well as payment of the $3,880.59 to LSEM as attorney's fees. It should be noted that the government is left with no award as a result of its untoward compromise settlement.

action under this section." 31 U.S.C. § 3730(f).

## A. Whether the False Claims Act precludes governmental liability for attorneys' fees of relator.

■ Statutory interpretation and construction must begin with an examination of the "plain language" of the statute in question. *U.S. v. Kassouf,* 144 F.3d 952, 955 (6th Cir.1998)(*citing Bread Political Action Committee v. Federal Election Committee,* 455 U.S. 577, 580, 102 S.Ct. 1235, 71 L.Ed.2d 432 (1982)). Absent ambiguity, a statute is to be interpreted according to its plain language, "unless there is evidence of Congress's contrary intent." *Id.* (citing *U.S. v. Apfelbaum,* 445 U.S. 115, 121, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980); *Nixon v. Kent County,* 76 F.3d 1381, 1386 (6th Cir.1996)). In the case at hand, the plain language of 31 U.S.C. § 3730(f) is unambiguous in its mandate that the United States in a qui tam action cannot be held liable for "expenses" which the relator incurs in bringing such an action. The crucial issue thus becomes whether Congress intended the term "expenses," as employed in Section 3730(f) of the FCA, to include "attorneys' fees." Insofar as there is any ambiguity in the statute, it lies in the meaning of the word "expenses." Accordingly, the Court will first examine the plain meaning of that term and its use in various statutory contexts. If this examination does not sufficiently resolve the ambiguity, then the legislative history surrounding 31 U.S.C. § 3730 must be explored.

■ The plain meaning of the term "expense" is "[t]hat which is expended, laid out or consumed. An outlay; charge; cost; price. The expenditure of money, time, labor, resources, and thought. That which is expended in order to secure benefit or bring about a result." BLACK'S LAW DICTIONARY 577 (6th ed.1990). Pursuant to this definition, a legal fee would certainly seem to be an expense, one which a relator in a qui tam action incurs "in order to secure benefit or bring about a result." *Id.* LSEM cites no authority for its contention that "expenses" and "attorney's fees" are distinct concepts and that section 3730(f) is inapplicable to an award of attorney's fees. Rather, LSEM states in a conclusory fashion that "[o]bviously, 'expenses' and an attorney's fee award are such distinct concepts that the subsection [i.e., § 3730(f) ] does not apply to the attorney's fee award." Supplemental Brief, p. 2. However, this is not so obvious. The discussion below examines language from a variety of statutes, including the FCA, to determine whether an award of attorneys' fees is in fact included within the category of expenses.

At first blush, LSEM's argument seems to derive support from other subsections of 31 U.S.C. § 3730. For example, section 3730(d)(2) distinguishes between the three concepts, "costs," "fees," and "expenses," and provides that a relator who proceeds on his own behalf and prevails "shall...receive an amount for reasonable expenses which the court finds to have been necessarily incurred, *plus* reasonable attorneys' fees and costs. All such *expenses, fees,* and *costs* shall be awarded against the defendant." 31 U.S.C. § 3730(d)(2)(emphasis added); *see also* 31 U.S.C. § 3730(d)(4)(permitting the defendant in a qui tam action to recover "its reasonable attorneys' fees *and* expenses" if defendant prevails and the court finds the claim was "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment"); 31 U.S.C. § 3730(d)(1)(regarding situations where the government proceeds on actions brought initially by a private person, and containing the same distinction between expenses, reasonable attorneys' fees and costs). *See also U.S. ex rel. Lindenthal v. Gen. Dynamics Corp.,* 61 F.3d 1402, 1413 (9th Cir.1995)(finding that *costs* constitute a category distinct from expenses under the FCA and that "fees, expenses, and costs are three distinct categories").

While the above-mentioned textual support for LSEM's argument appears persuasive, it is, however, outweighed by language from other federal statutes where attorneys' fees are regularly treated as a subset of expenses. *See, e.g.,* 28 U.S.C. § 2412 (stating that "a court shall award to a prevailing party other than the United States *fees and other expenses* . . . ."); 15 U.S.C.A. § 78p (relating to the right of stockholder or his attorney to attorneys' *fees and other expenses* incurred

in investigating or litigating claims for short-swing profits); 5 U.S.C. § 504 (stating that "[a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, *fees and other expenses* incurred by that party....") Of particular significance is the general statute governing the award of costs and fees in cases where the United States is a party. *See* 28 U.S.C. § 2412. Section 2412 repeatedly employs the term "fees and other expenses," suggesting that an award of attorneys' fees is indeed a subset of expenses. 28 U.S.C. § 2412(d)(1)(A),(B) & (D). As section 2412 further provides, "fees and other expenses" includes "reasonable attorneys fees." 28 U.S.C. § 2412(d)(2)(A). Section 2412 is directly referenced in 31 U.S.C. § 3730(g). Moreover, a commentator who has discussed 31 U.S.C. § 3730(f) has treated that subsection as referring to attorneys' fees included within the category of expenses. *See* John T. Boese, *The Science and Art of Defending a Civil False Claims Act Case Brought By a Qui Tam Relator,* American Bar Association Center for Continuing Legal Education National Institute, March 6–7 (1997)(stating that "[l]egal fees may be assessed against the defendant, 31 U.S.C. § 3730(d)(1), or the relator, 31 U.S.C. § 3730(f). The FCA explicitly states that the government 'is not liable for expenses which a person incurs in bringing an action under this statute.' ").

Assuming arguendo that the textual analysis discussed above does not resolve the issue, the legislative history of the False Claims Act announces Congress's intent. In Senate Report No. 99–345, the drafters of the False Claims Amendments Act of 1986 stated that

[s]ubsection (d)(5) of section 3730 provides that prevailing qui tam relators may be awarded reasonable attorneys fees in addition to any other percentage of award recovered. The existing False Claims Act does not contain a specific authorization for fees. Such fees will be payable by the defendant in addition to the forfeiture and damages amount. Unavailability of attorneys fees inhibits and precludes many private individuals, as well as their attorneys, from bringing civil fraud suits. *Paragraph (5) also clarifies that the Government will in no way be liable for fees or expenses incurred by a private individual who brings a civil false claims action.*

S. Rep. No. 99–345 (1986)(emphasis added). The above-quoted language expresses the clear intent of Congress to preclude governmental liability for expenses, including attorney's fees, incurred on behalf of a relator in a qui tam action.

Although the issue has not been frequently litigated, at least one federal district court has held that in a qui tam action the United States is *not liable* for a relator's attorneys' fees given the plain language of 31 U.S.C. § 3730(d)(1). *See U.S. v. Stern,* 932 F.Supp. 277 (M.D.Fla.1993)(modifying prior order to require defendant rather than the government to pay relator's fees and costs in light of express statutory language). In *Stern,* as in the instant case, the prevailing relators in a qui tam action brought a motion for determination of legal fees. *See U.S. v. Stern,* 818 F.Supp. 1521, 1521–22 (M.D.Fla.1993). The court initially ordered the government to pay $26,160 to the relators for their reasonable legal fees. *See id.* at 1522. After reconsideration, the court vacated its prior ruling, and ordered the defendant to pay the relators' attorneys' fees. *See U.S. v. Stern,* 932 F.Supp. 277 (M.D.Fla.1993)(stating explicitly that "the Court erred in taxing such fees and costs against the Government"). In the instant case, this Court is likewise barred from directing payment of the full amount of June Smith's attorney's fees against the United States.

In view of the foregoing authorities, this Court may not disregard Congress's expressed intent in the plain language of the False Claims Act. As 31 U.S.C. § 3730(f) clearly states, "the Government is not liable for expenses which a person incurs in bringing an action under this section." Although it is true that attorneys' fees are often referred to separately from other expenses, this fact does not mean that it would be proper to read attorneys' fees out of the more general category of expenses as that term is used in the FCA. To interpret 31 U.S.C. § 3730(f) as excluding fees would be

to strip the statute of its meaning. This the Court declines to do.

### B. Whether this Court may award full attorney's fees to the relator based upon its equitable powers alone.

 LSEM urges this Court to award full attorney's fees to June Smith, based upon its general equitable powers alone. However, as LSEM in its supplemental brief readily acknowledges, "[a] court in equity may not do that which the law forbids." *U.S. v. Coastal Refining and Marketing, Inc.*, 911 F.2d 1036, 1043 (5th Cir.1990)(*citing I.N.S. v. Pangilinan*, 486 U.S. 875, 108 S.Ct. 2210, 2216, 100 L.Ed.2d 882 (1988)). As discussed above, 31 U.S.C. § 3730(f) precludes an award of attorney's fees against the government in a qui tam action. Therefore, the law (i.e., the False Claims Act) forbids the taxing of attorneys' fees against the government. Consequently, this Court may not exercise its equitable powers to award attorney's fees in the manner requested by LSEM.

### C. Whether the government may be sanctioned pursuant to Federal Rule of Civil Procedure 11, and, if so, the appropriate sanction to be imposed.

 Despite this Court's finding, as stated above, that 31 U.S.C. § 3730(f) precludes the shifting of the full amount of the relator's attorney's fees to the government, this does not mean that the United States is thereby immunized from any monetary sanctions whatsoever. LSEM correctly points out that the government is still subject to monetary sanctions pursuant to Federal Rule of Civil Procedure 11. As a general rule, "money awards can be imposed against the United States only if there has been an express waiver of sovereign immunity." *Barry v. Bowen*, 884 F.2d 442, 443 (9th Cir.1989)(*citing U.S. v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983)). Nevertheless, "when the United States comes into court as a party in a civil suit, it is subject to the Federal Rules of Civil Procedure as any other litigant." *Mattingly v. U.S.*, 939 F.2d 816, 817 (9th Cir.1991). Based on this rationale, courts have held that sovereign immunity does not prohibit the imposition of monetary sanctions against the United States pursuant to Federal Rule of Civil Procedure 11. *See U.S. v. Gavilan Joint Community College District*, 849 F.2d 1246, 1251 (9th Cir.1988); *Joseph v. U.S.*, 121 F.R.D. 406, 413 (D.Haw.1988); *Adamson v. Bowen*, 855 F.2d 668, 671 (10th Cir.1988). Additionally, the government has conceded in its response to June Smith's supplemental brief that "the Court does have authority to impose sanctions against the United States" pursuant to Federal Rule of Civil Procedure 11. *See* Response of United States, p. 5. Since monetary sanctions may be imposed against the United States, the next issue is whether Rule 11 sanctions are in fact warranted under the particular circumstances found in the case at bar.

Federal Rule of Civil Procedure 11 governs representations made by counsel to the court. *See* Fed.R.Civ.Proc. 11(b); *see also Davis v. Hudgins*, 896 F.Supp. 561, 572 (E.D.Va.1995). The rule provides, in pertinent part, as follows:

> [b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, *or other paper*, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> ❋ ❋ ❋ ❋ ❋ ❋
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; . . . .

Fed.R.Civ.Proc. 11(b)(emphasis added). Rule 11 further provides that parties must be given "notice and a reasonable opportunity to respond" to the potential imposition of sanctions. Fed.R.Civ.Proc. 11(c). In the instant case, the government was provided with notice of possible sanctions on August 21, 1998, the date when Smith, through her counsel LSEM, filed the supplemental brief requesting full payment of attorney's fees. On September 18, 1998, the government filed its response to Smith's supplemental brief. Therefore, the government has received the

required "notice and a reasonable opportunity to respond" to LSEM's request for sanctions.

■ LSEM argues that the attorney for the government violated Rule 11(b)(2) by presenting to the Court a "paper," i.e., the Satisfaction of Judgment, which was not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.Proc. 11(b)(2). This Court agrees. As previously noted in the August 10, 1998 memorandum opinion and order, the United States filed a "Satisfaction of Judgment Against Howard Burgess Only," without complying with the FCA or providing notice of any kind to the relator June Smith. *See U.S. ex rel. Smith v. Gilbert Realty Co.,* 9 F.Supp.2d 800, 801 (E.D.Mich.1998)(Gadola, J.). This "paper"— the Satisfaction of Judgment—contained "legal contentions" that the entire $53,140 judgment, consisting of the $38,890 award to the United States and the $13,250 attorney's fee award to LSEM had been paid by compromise and that defendant Burgess was released from all claims.[2] The government had no authority to partially settle Ms. Smith's relator's claim because the government had neither notified her nor given her an opportunity to contest the settlement at a court hearing as required under 37 U.S.C. § 3730(c). *See U.S. ex rel. Smith,* 9 F.Supp.2d at 802–03.

This Court finds that Rule 11 sanctions are appropriate due to the "egregious oversight" of the United States in settling the judgment without regard to the relator's interests. As this Court has already determined, "by settling the judgment without notice to either the relator or her counsel, the United States has perpetrated a gross injustice on them." *Id.* at 802. The government argues in response that the settlement was a "good settlement," and that there has been no attempt to set the settlement aside. *See* Response of United States, p. 7. The government also maintains that there was no bad faith on its part in entering into the settlement. See *id.* Furthermore, according to the government, LSEM should not be allowed to receive a "windfall," because LSEM would most likely not have recovered any more from the defendants than the United States has already recovered. *See id.* at 2.

Taking these arguments into consideration, this Court must fashion an appropriate remedy, considering also that "[a] sanction imposed for violation of [Rule 11] shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.Proc. 11(c)(2). The rule further provides that the court may issue an "order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id.* This sanction is available "if imposed on motion and warranted for effective deterrence." *Id.* As the Sixth Circuit has noted,

[i]n determining an appropriate sanction under amended Rule 11, the court should consider the nature of the violation committed, the circumstances in which it was committed, the circumstances (including the financial state) of the individual to be sanctioned, and those sanctioning measures that would suffice to deter that individual from similar violations in the future. The court should also consider the circumstances of the party or parties who may have been adversely affected by the violation.

*Orlett v. Cincinnati Microwave, Inc.,* 954 F.2d 414, 420 (6th Cir.1992)(quoting American Judicature Society, *Studies of the Justice System, Rule 11 in Transition: The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11,* p. 40 (1989)). In *Orlett,* the court of appeals cited with approval the following statement, "Rule 11 sanctions should not be viewed as a general fee-shifting device. By and large federal courts are

---

2. As discussed above, the compromise amount was $18,000 and the United States offered the relator 30% of that amount, or $5,400. *See U.S. ex rel. Smith,* 9 F.Supp.2d at 801. This Court in its previous memorandum opinion and order directed the United States to pay June Smith the sum of $14,119.41, and to pay LSEM the sum of $3880.59. *See id.* at 803. Thus, the complete compromise amount of $18,000 has been paid to the relator and her attorney, and the government is left with no award.

bound by the 'American Rule,' requiring parties to shoulder their own legal expenses...." *Id.* at 420 (quoting American Judicature Society, p. 12.)

Applying the foregoing standards, this Court will order the United States to pay a monetary sanction pursuant to Federal Rule of Civil Procedure 11. The sanction will be based upon the costs and legal fees incurred by Ms. Smith as a result of bringing her motion to have the United States forthwith pay her full relator's share of the judgment and reasonable attorney's fees award. The sanction will be based additionally upon Ms. Smith's costs and legal fees associated with the filing of her supplemental brief on August 21, 1998. The exact amount of the sanction will be determined after Ms. Smith submits notice of her legal fees incurred as a result of bringing the two above-mentioned pleadings.

By imposing this sanction against the government, it is important to emphasize that this Court transgresses neither the letter nor the spirit of the False Claims Act. As discussed at length above, the Act prohibits holding the government liable "for expenses [including attorneys' fees] which a person incurs in bringing an action under this section." 31 U.S.C. § 3730(f). In the instant case, the United States is not being held liable for the relator's attorney's fees, as such. Rather, sanctions are being imposed to deter future unilateral settlements by the government, without providing notice to or obtaining the consent of the relator, in violation of 31 U.S.C. § 3730(c)(2)(B). The government is apprised that such conduct will not be tolerated and that procedural safeguards must be implemented to ensure that future relators are not treated in the same heedless manner.

### ORDER

**THEREFORE, IT IS HEREBY ORDERED** that relator's motion requesting full payment of attorney's fees from the United States is **GRANTED IN PART AND DENIED IN PART.**

IT IS **FURTHER ORDERED** that monetary sanctions will be imposed on the United States pursuant to Federal Rule of Civil Procedure 11.

**IT IS FURTHER ORDERED** that relator June E. Smith is directed *within 10 days* to submit an itemization of costs and attorney's fees, including appropriate interest, associated with the filing of her motion to have the United States forthwith pay the relator's 30% share of the $39,890 judgment and $13,250 attorney fee award plus interest, *and* associated with the filing of her Supplemental Brief regarding the same.

**SO ORDERED.**

### ORDER IMPOSING SANCTIONS ON THE UNITED STATES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11

On November 2, 1998, Relator June E. Smith submitted an itemization of costs and attorney's fees pursuant to this Court's October 22, 1998 memorandum opinion and order granting in part and denying in part qui tam plaintiff June Smith's motion requesting full payment of attorney's fees from the United States. The Court finds that counsel for Relator, Legal Services of Eastern Michigan, spent a total of 91.00 hours preparing and filing her motion to have the United States forthwith pay the relator's 30% share of the $39,890 judgment and $13,250 attorney fee award plus interest, and preparing and filing her Supplemental Brief regarding the same. The Court further finds the rate of $125.00 per hour to be fair and reasonable under the circumstances.

Accordingly, the United States will be directed to deposit with Legal Services of Eastern Michigan the sum of $11,375.00, as a monetary sanction pursuant to Federal Rule of Civil Procedure 11, and for the reasons set forth in this Court's October 22, 1998 memorandum opinion and order. In addition, the United States is directed to pay forthwith the sum of $3,880.59, plus interest, to Legal Services of Eastern Michigan, *as previously ordered* in this Court's August 10, 1998 memorandum opinion and order. *See U.S. ex rel. Smith v. Gilbert Realty Co.,* 9 F.Supp.2d 800 (E.D.Mich.1998)(Gadola, J.). Post-judgment interest accrued is to be computed according to 28 U.S.C. § 1961.

NOW, THEREFORE, IT IS HEREBY ORDERED that the United States shall pay forthwith the sum of $11,375.00 to Legal Services of Eastern Michigan, as a monetary sanction pursuant to Federal Rule of Civil Procedure 11.

IT IS FURTHER ORDERED that the United States shall pay forthwith the sum of $3,880.59, plus interest, to Legal Services of Eastern Michigan, as previously ordered in this Court's August 10, 1998 memorandum opinion and order.

SO ORDERED.