**BASS ANGLERS SPORTSMAN'S SOCIETY OF AMERICA and Chattanooga Bass Club**

**v.**

**SCHOLZE TANNERY, INC., et al.**

**Civ. A. No. 6009.**

United States District Court,
E. D. Tennessee, S. D.

May 17, 1971.

Finnell, Thompson & Scott, Cleveland, Tenn., for plaintiffs.

Chambliss, Bahner & Crawford, Chattanooga, Tenn., for defendants Swift Edible Oil Co., Farmers Chem. Co. & McKee Baking Co.

Ralph Shumacker, Chattanooga, Tenn., for Highway 58 Shopping Center.

Tanner & Jahn, Chattanooga, Tenn., for Selox Inc.

E. K. Meacham, Chattanooga, Tenn., for City of Chattanooga.

Morgan, Garner & Wood, Chattanooga, Tenn., for Nation Hosiery Mills, Inc.

Bishop, Thomas, Leitner, Mann & Milburn, Chattanooga, Tenn., for Chattam Drug & Chemical Co.

H. Wayne Grant, Chattanooga, Tenn., for Industrial Plating Co.

Stophel, Caldwell & Heggie, Chattanooga, Tenn., for W. R. Grace & Co.

Witt, Gaither, Abernathy & Wilson, Chattanooga, Tenn., for Wheland Foundry, Woodward Iron Co. & Ray Ser Dyeing Co.

Miller, Martin, Hitching, Tipton, Lenihan & Waterhouse, Chattanooga, Tenn., for Bowaters Southern Paper Co., Alcoa Chemical & Olin Mathieson Chem.

John L. Bowers, U. S. Atty., for Army.

Bass, Berry & Sims by Chas. Wray, Nashville, Tenn., for Olin Corp.

## OPINION

FRANK W. WILSON, Chief Judge.

This civil suit for penalties and injunctive relief arises out of alleged violations of 33 U.S.C. §§ 407 and 411 (the Rivers and Harbors Act of 1899). The plaintiff, Bass Anglers Sportsman's Society of America, Inc., is a society composed of some 11,000 members whose purpose is the furtherance of conservation interests and programs connected with the overall use of waterways and navigation throughout the United States. The plaintiff, Chattanooga Bass Club, Inc., is an affiliate of Bass Anglers Sportsman's Society of America, Inc., in its conservation programs. The defendants are classified as Group A and Group B defendants. The Group A defendants are composed of a number of manufacturers and processors that are allegedly polluting the waterways of Tennessee. The Group B defendants are the Secretary of the Army and the Director of the Corps of Engineers respectively, who allegedly have failed to perform their duties as imposed by law. Additionally and by motion to amend the plaintiff seeks to add the Department of Justice as a Group B defendant since it also allegedly has failed to perform its designated function pursuant to the Rivers and Harbors Act of 1899.

The legal theory of the plaintiffs in the instant case appears identical to the theory of the plaintiffs in the case entitled "Bass Anglers Sportsman's Society of America, et al. v. United States Plywood-Champion Papers, Inc., et al.," 324 F.Supp. 302 (D.C.S.D.Texas 1971, Docket # 70–H–1004). Judge Seals there defined the plaintiffs' theory in the following terms:

The legal theory of the plaintiffs in the present suit is that they have the right to prosecute a *qui tam* action pursuant to Sections 407 and 411 of Title 33, U.S.C., to obtain an injunction prohibiting the industrial defendants from dumping refuse into Texas waterways without a permit in violation of § 407, to obtain penalties provided by § 411 for each such violation of § 407, and to obtain an injunction requiring defendant Stanley R. Resor, Secretary of the Army, and defendant, Frederick J. Clark, Chief of Engineers, United States Army Corps of Engineers, to establish standards for the issuing of permits allowing the dumping of refuse into navigable waterways and tributaries of navigable waterways in the State of Texas and to apply these standards, once formulated, to anyone desiring to dump refuse into those navigable Texas waterways protected by 33 U.S.C. §§ 407 and 411. The plaintiffs have stated their cause of action no broader than §§ 407 and 411 of Title 33, U.S.C. Thus, plaintiffs must establish that they may, by this civil action, sue to enforce sections 407 and 411, or else the action must be dismissed for failure to state a claim upon which relief can be granted.

Additionally and by motion to amend, the plaintiffs in the instant case seek to obtain a writ of mandamus requiring the Department of Justice to perform mandatory duties imposed by 33 U.S.C. § 413 and specifically to join the plaintiffs in the prosecution of this action.

Before embarking upon a detailed analysis of the legal issues for decision by the Court, it is appropriate to set out the provisions of each of the statutes with which the Court will be concerned.

Section 407 of Title 33 U.S.C. provides the following:

*Deposit of refuse in navigable waters generally.* It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed: *Provided,* That nothing herein contained shall extend to, apply to, or prohibit the operations in connection with the improvement of navigable waters or construction of public works, considered necessary and proper by the United States officers supervising such improvement or public work: *And Provided Further,* That the Secretary of the Army, whenever in the judgment of the Chief of Engineers anchorage and navigation will not be injured thereby, may permit the deposit of any material above mentioned in navigable waters, within limits to be defined and under conditions to be prescribed by him, provided application is made to him prior to depositing such material; and whenever any permit is so granted the conditions thereof shall be strictly complied with, and any violation thereof shall be unlawful.

Section 411 of Title 33, U.S.C., establishes the following penalties for violation of § 407:

Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, and 409 of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, in the discretion of the court, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction.

Finally, section 413 of Title 33, U.S.C., provides that:

The Department of Justice shall conduct the legal proceedings necessary to enforce the provisions of sections * * * 407 * * * 411 * * * of this title; and it shall be the duty of United States Attorneys to vigorously prosecute all offenders against the same whenever requested to do so by the Secretary of the Army or by any of the officials hereinafter designated * * * "

Several observations are appropriate in considering the applicability of the aforementioned statutes to the instant case. First of all, § 407 establishes and defines a crime. Second, § 411 provides that violation of § 407 shall be a misdemeanor. Further, § 407 specifically defines the punishment to be imposed "on conviction." Finally, § 413 provides that it is the responsibility of the Department of Justice to conduct all the legal proceedings necessary to enforce § 407.

Section 411 provides that upon conviction of a violation of § 407, the defendant shall be punished by "fine" and/or "imprisonment." Further, the statute states that if a fine is imposed, "one-half of said fine to be paid to the

person or persons giving information which shall lead to conviction." This provision of § 411 is crucial in the instant case for the plaintiffs premise their right to enforce the provisions of § 407 upon this phrase of the statute. That is, the plaintiffs maintain that they should be permitted to proceed with this suit under § 407 and § 411 as a *qui tam* action. A *qui tam* action is "an action brought by an informer, under a statute which establishes a penalty for the commission or omission of a certain act, and provides that the same shall be recoverable in a civil action, part of the penalty to go to any person who will bring such action and the remainder to the state or some other institution." Black's Law Dictionary, p. 1414. Judge Pollock in Williams v. Wells Fargo & Co. Express, 177 F. 352 (8th Cir. 1910) described the *qui tam* action as follows:

It would seem at the common law actions to recover penalties prescribed by law were often prosecuted by what was known as "common informers." Blackstone's Commentaries, Book 3 [Coolidge Ed.] 160, and when a portion of the penalty recovered went to the person or persons informing, and a portion to the sovereign, the action was styled a *"qui tam* action."

Judge Pollock also observed that:

While it has been held there must be either express statutory authority authorizing an informer to prosecute in his own name, or such right must be given·by necessary implication (cases cited), yet, on the contrary, it has been ruled where a statute gives a portion of the recovery to an informer who prosecutes for the same * * * such statute contains sufficient implied authority to support a prosecution by an informer in his own name. Adams, Qui Tam, v. Woods, 2 Cranch, 336, 6 U.S. 336, 2 L.Ed. 297; * * *

This observation was further considered in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), where Justice Black noted in footnote 4 that: "Statutes providing for a reward to informers which do not spe-

cifically either authorize or forbid the informer to institute the action are construed to authorize him to sue. Adams v. Woods, 2 Cranch 336, 6 U.S. 336, 2 L. Ed. 297." Adams v. Woods, *supra*, was an action of debt brought to recover a penalty imposed by an act entitled "An Act to prohibit the carrying on of the slave trade from the United States to any foreign place or country." The Court applying rules of statutory construction concluded that: "In this particular case, the statute which creates the forfeiture does not prescribe the mode of demanding it; consequently, either debt or information would lie."

■ Turning to the circumstances of the instant case, each of the District Courts that have had occasion to consider Justice Black's comments, have rejected his analysis of the law. See Reuss v. Moss, American, Inc., No. 70–C–485 (E. D.Wisc. Feb. 23, 1971); Reuss v. Peter Cooper Corp., No. 70–C–486 (E.D.Wisc., Feb. 23, 1971) 323 F.Supp. 848; Bass Angler Sportsman's Society v. United States Steel Corp., et al. Nos. 70–733 (N.D.Ala., Feb. 8, 1971), 3124–N (M.D. Ala., Feb. 8, 1971), 6290–70–T (S.D. Ala., Feb. 8, 1971), 324 F.Supp. 412; Durning v. I. T. T. Rayonier, No. 9070, 325 F.Supp. 446 (W.D.Wash., Oct. 5, 1970); Bass Anglers Sportsman's Society of America, et al v. U. S. Plywood-Champion Papers, Inc.: As stated in the latter case:

Justice Black's dictum would appear to state the law too broadly. The *qui tam* action depends entirely upon statutory authorization, as it has never found its way into the common law. The action arises only upon a statutory grant. The fact that someone is entitled by statute to share in some penalty or forfeiture does not necessarily also give such person the right to bring an original action to recover such penalty or forfeiture. There must be statutory authority, either express or implied, for the informer to bring the *qui tam* action. When the statute is silent as to whether the *qui tam* action is authorized, and nothing

can be gleaned concerning congressional intent from the circumstances surrounding the passage of the statute then perhaps Justice Black's construction in favor of the *qui tam* action may be justified in many instances. But Black's construction obviously is inappropriate whenever the statute's language by necessary implication precludes such a conclusion.

An examination and analysis of § 411 shows clearly that the criticism of Justice Black's dictum is well taken. First of all, § 411 provides that every person or corporation violating § 407:

> * * * (S)hall be guilty of a misdemeanor, and *on conviction* thereof shall be punished by a fine * * * *or* by imprisonment * * *, *or* by both such fine and imprisonment, *in the discretion of the court*, one-half of said fine to be paid to the person or persons giving information *which shall lead to conviction.* (Emphasis added)

Accordingly, the informer's rights depend upon three prerequisites:

1) A criminal proceeding being instituted under § 411;

2) A conviction obtained in the criminal proceeding; and

3) The imposition of a fine as punishment.

See Bass Anglers Sportsman's Society of America, et al. v. U. S. Plywood-Champion Papers, Inc., et al., *supra.* The informer's rights are dependent entirely upon the successful prosecution of a criminal action.

▇ Viewed in this light, several additional observations are in order. First, criminal statutes cannot be enforced by civil proceedings. United States v. Claflin, 97 U.S. 546, 24 L.Ed. 1082 (1878). See also Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917; United States v. Regan, 232 U.S. 37, 34 S.Ct. 213, 58 L.Ed. 494; Hepner v. United States, 213 U.S. 103, 29 S.Ct. 474, 53 L.Ed. 720.

▇ Second and more important, case law indicates that alleged violations of criminal statutes may be enforced only by the proper prosecuting authorities and not by private parties. See Pugach v. Klein, 193 F.Supp. 630 (S.D.N.Y.1961). In this regard, case law is likewise clear that the Attorney General and his representatives in the Department of Justice are vested with broad discretion in determining whether to prosecute a particular criminal violation and in determining how any such prosecution will be maintained. See Spillman v. United States, 413 F.2d 527 (9th Cir. 1969) cert. den. 396 U.S. 930, 90 S.Ct. 265, 24 L.Ed.2d 228; Smith v. United States, 375 F.2d 243 (5th Cir. 1967) cert. den. 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106; United States v. Cox, 342 F.2d 167 (5th Cir. 1965) cert. den. 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700. Indeed, in Smith v. United States, *supra,* Judge Goldberg stated the principle in the following terms:

> The President of the United States is charged in Article 2, Section 3, of the Constitution with the duty to "take care that the laws be faithfully executed * * *" The Attorney General is the President's surrogate in the prosecution of all offenses against the United States. 5 U.S.C.A. § 291 *et seq.,* 28 U.S.C.A. § 507. The discretion of the Attorney General in choosing whether to prosecute or not to prosecute, or to abandon a prosecution already started, *is absolute.* Confiscation Cases, 1869, 74 U.S. (7 Wall.) 454, 19 L.Ed. 196; Powell v. Katzenbach, 1965, 123 U.S.App.D.C. 250, 359 F.2d 234, cert. den. 1966, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359, reh. den. 384 U.S. 967, 86 S.Ct. 1584, 16 L.Ed.2d 679.

See also Newman v. United States, 127 U.S.App.D.C. 263, 382 F.2d 479 (1967); Epperson v. United States, 125 U.S. App.D.C. 303, 371 F.2d 956 (D.C.Cir. 1967); In re Grand Jury January 1969, 315 F.Supp. 662 (D.Md.1970); United States v. Interlake Steel Corp., 297 F.

Supp. 912 (N.D.Ill.1969) [discussing discretion exercised by United States Attorney in prosecution under the Rivers and Harbors Act]; Shipman v. United States, 309 F.Supp. 441 (E.D. Va.1970). Moreover, mandamus will not lie to control the exercise of this discretion nor may the courts or private citizens otherwise interfere with the free exercise of the discretionary powers of the Attorney General and his representatives in their consideration, investigation and prosecution of criminal violations. See Peek v. Mitchell, 419 F.2d 575 (6th Cir. 1970); Smith v. United States, *supra*; United States v. Cox, *supra*.

■ Accordingly under the circumstances of the instant case and the applicable law the Court is of the opinion that the plaintiffs have no standing to maintain this action pursuant to §§ 407 and 411 nor to recover the penalty provided by § 411 short of a successful criminal prosecution. These statutes create and define crimes which may not be prosecuted by private civil action. The designation of the action as a *qui tam* action does not circumvent the conclusions reached for § 413 provides explicitly that the power to enforce the provisions of §§ 407 and 411 lies exclusively in the Department of Justice, thereby precluding any private civil action for the recovery of the informer's moiety.

In addition to seeking recovery of the fine provided in § 411, the plaintiffs also seek injunctive relief against both the Group A and Group B defendants. Indeed, the injunctive relief is actually the primary relief sought by the plaintiffs. As represented unto the Court at the hearing in this case, the recovery of the monetary fine provided in § 411 was at best a secondary objective of the plaintiffs. The plaintiffs' primary objective has been and remains the objective of preventing the defendants from polluting the waterways of Tennessee.

■ As to the Group A defendants, the plaintiffs seek a permanent injunction

" * * * prohibiting defendants from depositing refuse or waste of any kind or description into any navigable waterway or tributary of any navigable waterway, or to deposit any such refuse or waste on the banks of any navigable water or on the bank of any tributary of any navigable water in violation of 33 U.S.C. Section 407, without a permit from the Secretary of the Army as provided by statute."

The Court has heretofore observed that § 407 is a statute defining a criminal violation. Accordingly, the plaintiffs seek in this phase of the litigation to enjoin activity that is held by § 411 to be a crime. In this regard, the general rule appears to be that injunctive relief is not a proper remedy for the enforcement of criminal laws. See In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895). That is, where the only ground for seeking injunctive relief is that a criminal violation has occurred, the Courts will not interfere by an injunction since resort to the extraordinary remedy of injunction should not be used for the sole purpose of enforcing the criminal laws. As noted in United States v. Jalas, 409 F.2d 358 (7th Cir. 1969), this reluctance by the Courts to enjoin the commission of a crime is subject to the following three exceptions: 1) national emergencies, 2) widespread public nuisance, and 3) where a specific statutory grant of power exists. In summary, the criminal nature of a party's action is not in and of itself determinative of whether an injunction is necessary or appropriate. That is, as noted in 42 Am.Jur.2d, "Injunctions" § 157:

The remedy at law by criminal prosecution is not always efficacious and adequate, and however reluctant equity may be to use the process of injunction against criminal and penal acts, it will not hesitate to do so where the relief is necessary to pro-

tect the rights of the public or of private individuals. Thus, it is generally held that an injunction will be granted to restrain acts amounting to a public nuisance if they affect the civil or property rights or privileges of the public or endanger the public health, regardless of whether such acts are denounced as crimes.

The plaintiffs contend in the instant case that the deposits of waste and refuse into the streams of Tennessee have had and will continue to have a detrimental effect upon the fish and wildlife frequenting these streams. Further, the plaintiffs contend that they are aggrieved parties entitled to seek injunctive relief since they are corporations existing primarily for the purpose of conserving rivers and streams for the benefit of the public generally and sportsmen in particular.

Two issues require decision by the Court upon this phase of the action. First, whether injunctive relief is proper or appropriate pursuant to §§ 407 and 411. Second, assuming that injunctive relief is permissible, whether the plaintiffs in this lawsuit have a sufficient interest to seek injunctive relief, that is, whether these particular plaintiffs have standing to secure an injunction against the actions herein complained of.

 Returning to the first question, being the propriety of injunctive relief for alleged violations of § 407, the recent case United States of America v. Florida Power & Light Company, 311 F.Supp. 1391 (S.D.Fla., 1970) holds that "case law interpretation of Section 13, although arguable, endows [the] Court with the authority to issue injunctive relief for its violation." This conclusion finds support in two Supreme Court cases dealing with civil relief under the "Refuse Act," being, United States of America v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960) reh. den. 363 U.S. 858, 80 S.Ct. 1605, 4 L.Ed.2d 1739 and Wyandotte Transportation Company v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). The teaching of these cases is concisely stated by Mr. Justice Fortas in the *Wyandotte* case, as follows:

> The Federal Government is charged with ensuring that navigable waterways, like any other routes of commerce over which it has assumed control, remain free of obstruction. Cf. In re Debs, 158 U.S. 564, 586, 15 S.Ct. 900, 907, 39 L.Ed. 1092, 1103 (1895). The Rivers and Harbors Act of 1899, an assertion of the sovereign power of the United States, Sanitary District of Chicago v. United States, 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352 (1925) was obviously intended to prevent obstructions in the Nation's waterways. Despite some difficulties with the wording of the Act, we have consistently found its coverage to be broad. (cases cited)

In both the *Republic Steel* case and the *Wyandotte* case the argument was advanced that congressional authorization for injunctive relief under certain sections of the Act indicate a congressional intent that such extraordinary relief is appropriate only in those circumstances where specifically authorized and in no other. The Supreme Court answered this argument in the context of § 10 of the Act by stating:

> Congress has legislated and made its purpose clear; it has provided enough federal law in § 10 from which appropriate remedies may be fashioned even though they rest on inferences. Otherwise we impute to Congress a futility inconsistent with the great design of this legislation.

The Supreme Court in the *Republic Steel* case did however clearly state that § 13 of the Act was likewise to be accorded a broad interpretation:

> The philosophy of the statement of Mr. Justice Holmes in New Jersey v. New York, 283 U.S. 336, 342, 51 S.Ct. 478, 479, 75 L.Ed. 1104, 1106, that, "A river is more than an amenity, it is a treasure," forbids a narrow, cramped reading either of § 13 or of § 10.

Although the *Republic Steel* case involved interpretation of § 10 of the Act

and the *Wyandotte* case was concerned with available remedies under § 15 of the Act, the principles of both cases clearly favor and authorize the use of injunctive relief, at least upon application by the United States to prohibit violation of § 13 of the Act. See also Sanitary District v. United States, 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352 (1925); United States v. San Jacinto Tin Company, 125 U.S. 273, 8 S.Ct. 850, 31 L.Ed. 747 (1888). This conclusion is well founded for as noted in the *Wyandotte* case, "* * * we have found that a principal beneficiary of the Act, if not the principal beneficiary, is the Government itself." Under these circumstances, it appears clear that this Court has authority to grant injunctive relief for violation of § 13 (33 U.S.C. § 407) of the Rivers and Harbors Act of 1899.

Turning to the second issue, whether the plaintiffs in the instant case have standing to seek injunctive relief in this case, the simple answer is that they do not. The following quotation from Carolina Power and Light Co. v. South Carolina Public Service Authority, 94 F.2d 520 (4th Cir. 1938) cert. den. 304 U.S. 578, 58 S.Ct. 1048, 82 L. Ed. 1541, offers the most concise reason for this conclusion:

"* * * [I]t is perfectly well settled that any unlawful obstruction of a navigable stream or a public highway is a matter for the public authorities, not a matter of which private individuals may complain, unless they suffer some direct and special injury to their rights not common to the public. (cases cited) And, with respect to obstruction of navigable waters, provision is expressly made by federal statute for the Attorney General of the United States to institute proceedings for the removal of such obstruction, 30 Stat. 1151, as amended 33 U.S.C. A. § 406.

See also Northern P. R. Co. v. Whalen, 149 U.S. 157, 13 S.Ct. 822, 37 L.Ed. 686; Georgetown v. Alexandria Canal Co., 12 Pet. 91, 37 U.S. 91, 9 L.Ed. 1012; Pacific Inter-Club Yacht Association v. H. A.

Morris, 197 F.Supp. 218 (N.D.Cal. 1960); Chitwood v. South Carolina Electric & Gas Co., 51 F.Supp. 486 (E. D.S.C.1943); 39 Am.Jur., "Nuisances" § 123 et seq. The general rule is clear therefore that private individuals have no standing to champion the rights of the public except where such private individual suffers some special injury or damage.

This lawsuit concerns alleged impairment and pollution of the waterways of the United States, specifically, in the State of Tennessee. The plaintiffs rest their case and their right to relief upon the Rivers and Harbors Act of 1899 and specifically the "Refuse Act" [33 U.S.C. § 407] therein contained. As noted in the *Wyandotte* case: "The Rivers and Harbors Act of 1899, an assertion of the sovereign power of the United States (cases cited) was obviously intended to prevent obstructions in the Nation's waterways." The Federal Government, pursuant to Article I § 8 of the Constitution, is responsible for overseeing and protecting channels of commerce including navigable waterways. The Rivers and Harbors Act of 1899 is a statutory assumption of that responsibility by Congress. Section 413 of that Act vests the Department of Justice with the responsibility of conducting those legal proceedings necessary to enforce the provisions of the "Refuse Act." The allegations of the complaint herein reflect that the plaintiffs, as private parties, are concerned with the preservation of the Nation's waterways and of the fish and wildlife that are indiginous to these waterways.

The plaintiffs' as special interest groups, may indeed conceive of their interest in conservation and the alleged pollution of our waterways as a special injury. However, the destruction or impairment of our environment, through water and/or other forms of pollution, is a blight upon the Nation and not merely the concern of special interest groups such as the plaintiffs. Technical proficiency and progress has had an unexpected and unwanted byproduct, ecologi-

cal erosion. The extent of this erosion is not fully known at this point in time. But, realization by man that he is slowly but certainly destroying not only the aesthetics of his environment, but the life sustaining capacity of that environment has caused a public outcry that sounds world wide. Human response to this impending disaster has manifested itself through legislation, executive fiat, consideration by the judiciary and, most importantly, through the response of the citizens of the Nation in the reassessment of and the reaction to the treatment accorded the environment. Under these circumstances, it is clear to this Court that the plaintiffs, as private citizens, have no special standing under the Rivers and Harbors Act which would permit them to seek injunctive relief against the Group A defendants in lieu of appropriate governmental officials or agencies. The plaintiffs' concerns and motivation in seeking this relief is inseparable from the concerns of the general public. Likewise, the injury and damage sustained by the plaintiffs in the instant case is indistinguishable from the injury and damage suffered by the public at large.

Additionally, the plaintiffs seek the following injunctive relief against the Group B defendants:

A) A permanent injunction requiring said defendants to establish standards for the issuing of permits allowing the dumping of refuse into navigable waterways and tributaries of navigable waterways in the State of Tennessee; and

B) A permanent injunction requiring said defendants to apply said standards, and formulated to anyone desiring to dump refuse into those navigable Tennessee waterways protected by 33 U.S.C. §§ 407 and 411.

The Rivers and Harbors Act of 1899 (33 U.S.C. §§ 401 et seq.), and more specifically, the "Refuse Act," contain no language which requires either the Secretary of the Army or the Director of the Corps of Engineers to establish such standards and issue permits pursuant to these standards. Section 407 of the Act does provide that:

> The Secretary of the Army, whenever in the judgment of the Chief of Engineers * * * may permit the deposit of any material above mentioned in navigable waters, within limits to be defined and under conditions prescribed by him, provided application is made to him prior to depositing such material * * *.

Additionally, § 419 authorizes the Secretary of the Army to develop such a permit system. In relevant part, this statute provides:

> The Secretary of the Army is authorized and empowered to prescribe regulations to govern the transportation and dumping into any navigable water, or waters adjacent thereto, of dredgings, earth, garbage, and other refuse materials of every kind or description, whenever in his judgment such regulations are required in the interest of navigation.

These statutes clearly indicate that the development and implementation of a permit system by the Secretary of the Army and the Chief of Engineers is discretionary as opposed to mandatory. The relief sought in this phase of the action is in the nature of mandamus to compel the Secretary of the Army and/or the Chief of Engineers to establish and apply standards for the issuance of permits allowing the deposit of refuse in navigable waters.

The writ of mandamus is an extraordinary writ and prior to its issuance, the party requesting it must establish that he has a clear and certain right and that the duties of the defendant are plainly defined and peremptory. See Albert v. United States District Court, 283 F.2d 61 (6th Cir. 1960) cert. den. 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 706,

and cases cited. Simply stated, mandamus is proper to command an official to perform a ministerial or non-discretionary act, United States v. Walker, 409 F.2d 477 (9th Cir. 1969), but not appropriate to require an official to perform some discretionary act. This Court is without authority to require the Secretary of the Army or the Chief of Engineers to take any action which they have discretion to perform or not perform as they may determine. See McWhorter v. Kennedy, 324 F.2d 793 (8th Cir. 1963); Hudgins v. Circuit Court of Chesapeake, Va., 294 F.Supp. 258 (E.D.Va.1968); Commonwealth of Massachusetts v. Connor, 248 F.Supp. 656 (D.Mass.1966) aff'd per curiam 366 F.2d 778 (1st Cir. 1966).

It is clear under the applicable law and the statutes in the instant case that this Court has no authority to direct the Secretary of the Army or the Chief of Engineers to set standards for the issuance of permits or to require the issuance of permits. See Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 50 S.Ct. 320, 74 L.Ed. 809.

The plaintiffs have moved to amend the complaint to join the Department of Justice as a party defendant and to request a writ of mandamus requiring the Department of Justice to perform mandatory duties imposed by 33 U.S.C. § 413, specifically, to join the plaintiffs in the prosecution of this action.

■ As the Court has heretofore observed, the discretion of the Attorney General in choosing whether to prosecute or not to prosecute criminal violations is absolute and mandamus will not lie to control the free exercise of this discretion. Likewise insofar as the plaintiffs are seeking an order upon the Department of Justice to require them to join with the plaintiffs in seeking injunctive relief for violation of § 13 (33 U.S.C. § 407) of the Rivers and Harbors Act of 1899, mandamus will not lie. Although 33 U.S.C. § 413 provides that "the Department of Justice shall conduct the legal proceedings necessary to enforce the provisions of sections * * * 407 * * * 411 of this title" and although, as the Court has heretofore held, injunctive relief is one tool available for enforcement of the Act, there is no mandatory duty or obligation upon the Department of Justice to seek either a criminal or a civil remedy. Rather, these are matters of discretion and the Court is without authority to direct the Department of Justice to join the plaintiffs in seeking injunctive relief for alleged violations of the Rivers and Harbors Act of 1899.

■ Finally, since the plaintiffs do not premise their cause of action against these government officials upon 28 U.S.C. § 1361 and since the Court has heretofore concluded that relief in the nature of mandamus is not proper, the Court is further of the opinion that it lacks jurisdiction over the Group B defendants, since this suit is in reality an action against the sovereign to which it has not consented and does not fall within either of the recognized exceptions to the doctrine of sovereign immunity, being 1) action by officers beyond their statutory powers, and 2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void. See Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15, (1963); Larson v. Domestic & Foreign Commerce Corp, 337 U.S. 682, 93 L.Ed. 1628, 69 S.Ct. 1457, (1949); Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962). For the reasons hereinabove stated, this lawsuit will stand dismissed as to all parties defendant. An order will enter accordingly.