IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 1, 2024

## RIMON ABDOU v. WESLEY BEN CLARK ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 23C372   Thomas W. Brothers, Judge**

_____

**No. M2023-01461-COA-R3-CV**

_____

In this legal-malpractice case, the trial court granted Appellees'/Attorneys' Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim. Appellant/Client appeals. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ANDY D. BENNETT and KRISTI M. DAVIS, JJ., joined.

Shelley S. Breeding, Knoxville, Tennessee, for the appellant, Rimon Abdou.

Wendy L. Longmire, Nashville, Tennessee, for the appellees, Frank Ross Brazil and Wesley Ben Clark.

**OPINION**

**I. Background**

On February 6, 2020, Appellant Rimon Abdou retained attorneys Wesley Ben Clark and Frank Ross Brazil (together "Appellees") to represent him in a lawsuit against his ex-wife and other individuals for harassment and discrimination. Mr. Abdou claims that, during the course of their representation, Appellees did not intervene to stop the opposing parties and their attorneys from a pattern of harassment against him. Specifically, Mr. Abdou asserts that the opposing counsel and parties: (1) attempted to obtain Mr. Abdou's medical records without authority; (2) subjected Mr. Abdou to a nine-hour, single-day deposition; (3) pressed for unfounded discovery; and (4) refused to answer Mr. Abdou's

discovery. Mr. Abdou claims that Appellees failed to properly address opposing counsel and parties' tactics, thus undermining Mr. Abdou's lawsuit.

As the case progressed, Mr. Abdou claims that Appellees began "pressing" him to voluntarily dismiss certain claims. Mr. Abdou avers that Appellees cautioned him that "legally you must" dismiss "or we [] risk sanctions." Mr. Abdou repeatedly rejected the request to dismiss the claims; however, according to Mr. Abdou, Appellees "kept harassing and pressure[ing]" Mr. Abdou "for a month by calling him during his work hours without scheduling a time for phone calls" and "repeatedly stating the wrong legal conclusions." Mr. Abdou, believing the evidence supported his legal claims, continued to refuse Appellees' request for voluntary dismissal of certain claims. After much dispute, on April 21, 2021, the trial court entered an "Agreed Order of Partial Dismissal," dismissing several of Mr. Abdou's claims with prejudice. Mr. Abdou asserts that, when Appellees sent him a letter attaching the order, they failed to explain what the term "with prejudice" meant.

Following entry of the agreed order, the parties began scheduling the matter for hearing. During this process, Mr. Abdou asserts that Appellees "engaged in a number of prejudicial actions, including informing him via text message after midnight that his presence was required for a hearing just hours later." Mr. Abdou, who is a "Christian in the Eastern tradition," explained that he could not attend the hearing because the dates conflicted with certain religious holidays. Mr. Abdou asserts that opposing counsel accused him of intentionally trying to delay the trial, and Appellees "did not contest" this accusation.

Mr. Abdou asserts that he fired Appellees in May 2021; however, the record shows that Appellees continued to represent Mr. Abdou until August 16, 2022, when the trial court entered an order allowing them to withdraw, *see infra*. While still technically represented by Appellees, Mr. Abdou hired another attorney, Mr. Jake VanAusdall, to handle a separate but related matter; at some point, Mr. Abdou asked Mr. VanAusdall to consolidate the cases and to represent him in both. The cases were consolidated in May 2022. Mr. Abdou claims that it was only after the consolidation that he learned what the term "with prejudice," as used in the agreed order of partial dismissal, *supra*, meant. As set out in his brief:

> Only after this consolidation did Abdou's other attorney [*i.e.*, Mr. VanAusdall] explain to him what happened when the claims were voluntarily dismissed with prejudice. In other words, the earliest point at which Abdou understood that his claims were dismissed with prejudice was May 11, 2022.

Mr. VanAusdall subsequently withdrew from the case in June 2022. Mr. Abdou asserts that Mr. Brazil, who was still Mr. Abdou's attorney of record at the time, "attempted to break the attorney client privilege" by contacting Mr. VanAusdall about his reasons for withdrawing. Appellant officially fired Appellees on July 14, 2022. On July 21, 2022,

Appellees filed a motion to withdraw, which was granted by order of August 16, 2022. During the motion to withdraw hearing, Mr. Brazil allowed opposing counsel to use his phone. Mr. Abdou asserts that this action constituted a betrayal "that was like Mr. Brazil was representing the opposing lawyer instead of his client," and was "a stab[] in [my] back from [my] former lawyers." As a result of the withdrawal of his attorneys and facing opposing counsel's motion to require him to proceed pro se through the trial, Mr. Abdou voluntarily dismissed his lawsuit in September 2022. In October 2022, Mr. Abdou was charged with discretionary costs in the amounts of $3,286.60 and $727.70.

On February 20, 2023, Mr. Abdou, acting pro se, filed his original complaint against Appellees. On May 12, 2023, Appellees filed a Tennessee Rule of Civil Procedure 12.02 motion to dismiss, alleging that Mr. Abdou failed to state a claim for relief and that any action for legal malpractice was barred by the applicable statute of limitations. A hearing was scheduled for June 9, 2023. On the morning of the hearing, Appellant, still acting *pro se*, filed an amended complaint, and the matter was continued. On July 7, 2023, Appellees filed a motion to dismiss the amended complaint, wherein they again alleged failure to state a claim and running of the statute of limitations. The case was set for hearing on July 14, 2023.

Because he had not retained counsel, Mr. Abdou moved to continue the hearing set for July 14, 2023. On July 13, 2023, attorney Megan Swain filed a Tennessee Rule of Civil Procedure 72 declaration on behalf of Appellant in support of his motion to continue. Although Ms. Swain did not enter a notice of appearance on behalf of Appellant, she argued that if the trial court refused to grant Appellant's most recent motion for continuance, then Appellant would be forced to voluntarily dismiss his lawsuit. On July 14, 2023, the trial court granted Appellant's motion to continue. Having reviewed the underlying case and Appellees' actions therein, on August 20, 2023, Ms. Swain wrote a letter to the Tennessee Board of Professional Responsibility ("BPR"). Therein, Ms. Swain opined that Appellees breached their duty as Mr. Abdou's counsel and committed legal malpractice.

Meanwhile, Mr. Abdou retained attorney M. Reed Martz for the limited purpose of responding to Appellees' motion to dismiss, which was heard on August 25, 2023. By order of September 18, 2023, the trial court granted Appellees' motion. As discussed below, the trial court held that Appellant's claims of legal malpractice were barred by the applicable one-year statute of limitations. Applying the discovery rule, the trial court determined that Mr. Abdou's claims accrued no later than April 21, 2021, when the agreed order of partial dismissal was entered. As such, the trial court found that Mr. Abdou's February 20, 2023 complaint was untimely. Mr. Abdou filed a timely notice of appeal. After the appeal was filed, Mr. Abdou sought to have Ms. Swain's letter included in the appellate record. By order of April 8, 2024, the trial court denied Mr. Abdou's request. Mr. Abdou then filed a motion in this Court, asking us to consider Ms. Swain's BPR letter as an "additional fact." By order of April 16, 2024, we reserved ruling. We will address the motion below.

## II. Issue

The sole issue for review is whether the trial court erred in granting Appellees' Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss.

## III. Preliminary Matters

Before addressing the substantive issue, we first address two motions that were filed by Mr. Abdou in this Court. As noted above, on April 5, 2024, Mr. Abdou filed a "Motion to Consider Additional Facts," which Appellees opposed. The "additional facts" Mr. Abdou seeks to admit are Ms. Swain's BPR letter and accompanying emails. Ms. Swain's letter (attached as Exhibit A to Mr. Abdou's motion) is dated August 30, 2023, which was after the final hearing in the trial court. In October 2023, Mr. Abdou moved to have Ms. Swain's letter and accompanying documents admitted in the trial court, and Appellees moved to strike. By order of February 27, 2024, the trial court denied Mr. Abdou's motion, finding that

> Megan Swain is not counsel of record for [Mr. Abdou]. Pursuant to Tenn. R. App. P. 24, this Court determined that the exhibits were not considered by the Trial Court in its ruling on [Appellees'] Motion to Dismiss. In addition, the Court determined that these matters sought for inclusion in the record are not necessary to convey a fair, accurate and complete account of what transpired in the Trial Court.

Now, on appeal, Mr. Abdou seeks admission of the same documents the trial court denied. Under Tennessee Rule of Appellate Procedure 14, this Court

> may consider facts concerning the action that occurred after judgment. Consideration of such facts lies in the discretion of the appellate court. While neither controlling nor fully measuring the court's discretion, consideration generally will extend only to those facts, capable of ready demonstration, affecting the positions of the parties or the subject matter of the action such as mootness, bankruptcy, divorce, death, other judgments or proceedings, relief from the judgment requested or granted in the trial court, and other similar matters

Tenn. R. App. P. 14(a). As this Court has explained,

> [w]hen analyzing whether to consider post-judgment facts in accordance with Tennessee Rule of Appellate Procedure 14, this Court should not consider "evidence which it would be possible to controvert or dispute in the trial court, nor concerning the effect of which there might be differences of opinion, or from which different conclusions could possibly be drawn."

- 4 -

*Duncan v. Duncan*, 672 S.W.2d 765, 767 (Tenn. 1984) (quoting *Crawford v. Crawford*, 181 P.2d 526, 532 (Kan. 1947)).

*Blue v. Church of Christ Sanctified, Inc.*, No. M2021-00244-COA-R3-CV, 2022 WL 2302263, at *9 (Tenn. Ct. App. June 27, 2022).

We have reviewed Ms. Swain's letter and the accompanying documents and conclude that the contents thereof are not germane to the trial court's dismissal of the lawsuit under Tennessee Rule of Civil Procedure 12.02. Ms. Swain's letter is comprised largely of facts that were known to the parties prior to the trial court's dismissal of the lawsuit. Other than the fact that the letter itself was drafted after the entry of the trial court's final order, the letter contains only these previously known facts and Ms. Swain's opinion as to the bearing of these facts on Appellees' representation. In short, "consideration of these post-judgment facts would not affect the positions of the parties or the subject matter of the action." *Druek v. Hydrogen Engine Ctr., Inc.*, No. E2019-02142-COA-R3-CV, 2020 WL 6375393, at *6 (Tenn. Ct. App. Oct. 30, 2020) (citing Tenn. R. App. P. 14(a)). As such, we deny Mr. Abdou's motion to consider additional facts. *See, e.g.*, *Lovin v. State*, 286 S.W.3d 275, 283 (Tenn. 2009) ("[B]oth this Court and the Court of Appeals have declined to invoke Tenn. R. App. P. 14 with regard to [ ] facts that are irrelevant[.]"); *Haiser v. Haines*, No. E2013-02350-COA-R3-CV, 2014 WL 7010723, at *6 (Tenn. Ct. App. Dec. 12, 2014) (denying a motion to consider post-judgment facts where this Court did "not believe this development has any bearing on the positions of the parties in this lawsuit," and "the inclusion of these facts in our consideration would not have altered the outcome of this appeal in any way as to any issue before us").

Mr. Abdou also filed a motion to strike Appellees' reply brief under Tennessee Rule of Appellate Procedure 27(c), which provides, in relevant part, that, "[i]f the appellee also is requesting relief from the judgment, the appellee may file a brief in reply to the response of the appellant to the issues presented by appellee's request for relief." Here, Appellees did not raise additional issues for review in their responsive brief. Accordingly, Appellees were not entitled to file a reply brief under Rule 27(c). *See, e.g., Harris v. Harris*, No. E2018-01445-COA-R3-CV, 2019 WL 2293456, at fn. 1. (Tenn. Ct. App. May 29, 2019) (granting appellant's motion to strike appellee's reply brief because appellee's "responsive brief raised no additional issues for this Court's review."). Accordingly, Mr. Abdou's motion to strike Appellees' reply brief is granted, and this Court will not consider Appellees' reply brief in its review. We now turn to the substantive issue in this appeal.

## IV. Motion to Dismiss

It is well-settled that a motion to dismiss tests "'only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence.'" *Elvis Presley Enter., Inc. v. City of Memphis*, 620 S.W.3d 318, 323 (Tenn. 2021) (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)). When considering a

motion to dismiss, the trial court must determine whether the allegations of the complaint, if considered true, constitute a cause of action as a matter of law. *Id*. (citation omitted). The trial court "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Id*. (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002))) (additional citations omitted). It should grant the motion "'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Id*. (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)) (additional citations omitted). On appeal, we must also regard the allegations of the complaint as true. *Elvis Presley Enter.*, 620 S.W.3d at 323 (citation omitted). "The failure to state a claim upon which relief can be granted is determined by an examination of the complaint alone." *Cook v. Spinnaker's of Rivergate. Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). "A trial court's decision to grant or deny a motion to dismiss is a matter of law that we review de novo with no presumption of correctness. *Robinson v. City of Clarksville*, 673 S.W.3d 556, 566 (Tenn. Ct. App. 2023).

We further note that we are cognizant of the fact that Mr. Abdou, acting pro se, drafted his amended complaint. In his appellate brief, Mr. Abdou contends that the trial court failed to give him sufficient "leeway" in the drafting of his complaint. Specifically, in the issues section of his brief, Mr. Abdou states:

> This Court has instructed trial courts to give pro se litigants "a certain amount of leeway in drafting their pleadings." [citing *Vandergriff v. ParkRidge East Hospital*, 482 S.W.3d 545, 551 (Tenn. Ct. App. 2015)]. This standard for pro se litigants is even more important at the pleading stage where a trial court must give the complaint a liberal reading and simply assess whether an opposing party has notice of the issues presented.

In context, the *Vandergriff* Court explained that

> [p]arties who represent themselves (pro se litigants) are entitled to fair and equal treatment by the courts; nevertheless, "the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn.Ct.App.2003). Therefore, courts may "not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Id*. As we have explained:
>
>> The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those

- 6 -

applied to papers prepared by lawyers.

> Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants.

*Id*. (internal citations omitted).

*Vandergriff*, 482 S.W.3d at 551. Tennessee Rule of Civil Procedure 8.05 provides, in relevant part, that "[e]ach averment of a pleading shall be simple, concise and direct." Tennessee Rule of Civil Procedure 8.06 requires that "[a]ll pleadings shall be so construed as to do substantial justice." So, while courts may excuse inartful drafting by pro se litigants, these litigants still are "held to the same procedural and substantive standards to which lawyers must adhere." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 46 (Tenn. Ct. App. 2013). Certainly, the rules of civil procedure mandate that "[p]arties who choose to represent themselves are entitled to fair and equal treatment by the courts." *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000) (citing *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)). Nevertheless, "courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995)). In short, Tennessee Rule of Civil Procedure 12.02(6) motions "are not designed to correct inartfully worded pleadings." *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992), *perm. app. denied* (Tenn. Jan. 19, 1993) (citation omitted). "[A] complaint should not be dismissed, no matter how poorly drafted, if it states a cause of action." *Id.* (citing *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 152 (Tenn. 1966); *Collier v. Slayden Bros. Ltd. Partnership*, 712 S.W.2d 106, 108 (Tenn. Ct. App. 1985). "Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when no set of facts will entitle the plaintiff to relief [], or when the complaint is totally lacking in clarity and specificity." *Id.* (citing *Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690, 691 (Tenn.1984); *Smith v. Lincoln Brass Works, Inc.*, 712 S.W.2d 470, 471 (Tenn.1986)). With the foregoing in mind, we turn to our de novo review of Mr. Abdou's complaint.

We begin with three enumerated causes of action asserted as legal malpractice. Turning to Mr. Abdou's amended complaint, in "Count I", he purports to assert a claim arising from Appellees' alleged "Violation of Ethics Rules of TN Courts Rule 8: Rules of Professional Conduct." The trial court dismissed Count I, holding that "Count I alleges a violation of the Tennessee Rules of Professional Conduct. This claim is dismissed as the Rules themselves are not a basis for civil liability." We agree.

As stated in Tennessee Supreme Court Rule 8, Paragraph 21,

> [v]iolation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Nevertheless, In some circumstances, a lawyer's violation of a Rule may be relevant in determining whether there was also a breach of the applicable standard of conduct.

Accordingly, we conclude that the trial court properly dismissed Count I of Mr. Abdou's amended complaint for failure to state a claim.

In Count II of his amended complaint, Mr. Abdou purports to assert a claim for "Racism," to-wit:

### COUNT II: Racism

Plaintiff suffered emotionally and financially from [Appellees] when they refused to take any legal action toward the racism of [the defendants'] lawyer in [Case]19C2561 for his false statement to the Special Master to schedule a trial around [Appellant's] holiday time, then took [Appellant] [to] court in unnecessary hearings and one of them in [Appellant's] Eastern Christmas holiday on January 7, 2022. Also, refunded to file a motion that the case is not ready for trial. (paragraph 11, 22, 23, 24, 27, 28, 29, 30, 31 and 37 of the Complaint).

In the cited paragraphs of his amended complaint, Mr. Abdou asserts that the defense counsel in the underlying lawsuit was "racist and aggressive." However, Mr. Abdou's amended complaint fails to specify any actions on the part of the Appellees that would constitute racism. As the trial court correctly found, "[n]either the Complaint nor the Amended Complaint articulate racist actions against these [Appellees]." Furthermore, Tennessee law does not recognize an independent cause of action for racism per se. As the trial court correctly found, "There is no statutory common law action for 'racism.'" Based on the pleadings, the trial court did not err in dismissing Count II of Mr. Abdou's amended complaint for failure to state a claim.

In Count III of his amended complaint, Mr. Abdou alleges that Appellees violated several sections of Title 39 of the Tennessee Code Annotated, including: (1) "Corruption" under section 39-16-102;[1] (2) "Fraud" under section 39-14-104;[2] and (3) "Duress" under section 39-11-504. Importantly, Title 39 sets out "Criminal Offenses," which cannot be pursued in civil proceedings. *See, e.g.*, ***Bass Anglers Sportsman's Soc. v. Scholze Tannery, Inc.***, 329 F. Supp. 339, 345 (E.D. Tenn. 1971) (citing ***United States v. Claflin***, 97 U.S. 546 (1878)) ("criminal statutes cannot be enforced by civil proceedings."). Accordingly, the trial court correctly held that:

> With respect to Count III of the Amended Complaint, it alleges violations of criminal statutes. It is well settled that criminal statutes cannot be enforced by civil proceedings. ***Scholze Tannery, Inc.***, 329 F. Supp. 339, 345 (E.D. Tenn. 1971) (citing ***United States v. Claflin***, 97 U.S. 546 (1878). Thus, the claims of Count III are respectfully dismissed.

Because Count III of the amended complaint seeks to enforce criminal statutes in the context of a civil proceeding, we affirm the trial court's dismissal of same.

Turning to Mr. Abdou's specific allegations of legal malpractice, as correctly noted by the trial court:

> Taking [Appellant's] Complaint and construing it in the light most favorable to the [Appellant], he has alleged four (4) instances of legal misconduct: 1) pressuring [Appellant] to enter into an agreed order of partial dismissal in the underlying case, (2) [Appellant] not understanding the term of "with prejudice," and 3) other acts occurring prior to January 7, 2022, and finally, 4) holding [Appellant's] file hostage.[3]

On our review of Mr. Abdou's amended complaint, his allegations against Appellees for various slights and failures involve actions or inactions that occurred primarily in mid-to-late 2021. For example, Mr. Abdou asserts that Appellees failed to protect him from a nine-hour deposition conducted by opposing counsel. According to his amended complaint, the deposition occurred in February 2021. Furthermore, concerning Mr. Abdou's allegation that Appellees pressured him to dismiss certain claims, his amended

---

[1] Section 39-16-102 is the criminal statute addressing "Bribery," not "Corruption" as asserted by Appellant.

[2] Contrary to Mr. Abdou's allegation of "Fraud," section 39-14-104 is the criminal statute addressing "Theft of services."

[3] As correctly noted by the trial court, at Paragraph 35 of the amended complaint, Mr. Abdou concedes that Appellees agreed to give him his file in person but would not mail or email the file to him. Mr. Abdou states that he would not agree to an in-person meeting. Accordingly, the trial court correctly held that, "[w]ith respect to holding [Appellant's] file hostage, [Appellant] conceded in his Amended Complaint, [] that the [Appellees] offered to meet him and provide him with the file."

complaint states that this occurred in March 2021. As to Mr. Abdou's complaint regarding Appellees' alleged failure to defend against false statements and other inappropriate actions by opposing counsel, the amended complaint states that these incidents occurred in October, November, and December of 2021. Thus, any claims arising from Appellees' pressuring Mr. Abdou to dismiss certain claims, their failure to object to alleged racism and harassment against Mr. Abdou by opposing counsel, or any other incidents that occurred during discovery or in open court are barred by the one-year statute of limitations as his complaint was not filed until February 20, 2023.

The sole question remaining is the accrual date of the claim arising from Appellees' alleged failure to advise Mr. Abdou of the meaning of "with prejudice," as used in the agreed order of partial dismissal. As the Tennessee Supreme Court has explained:

> Tennessee Code Annotated section 28-3-104(c)(1), Tennessee's statute of limitations for legal malpractice claims, requires that the action be filed "within one (1) year after the cause of action *accrued*. . . ." Tenn. Code Ann. § 28-3-104(c)(1) (emphasis added). As this Court has previously explained, "The concept of accrual relates to the date on which the applicable statute of limitations begins to run." ***Redwing v. Catholic Bishop for Diocese of Memphis***, 363 S.W.3d 436, 457 (Tenn. 2012) (citing ***Columbian Mut. Life Ins. Co. v. Martin,*** 175 Tenn. 517, 136 S.W.2d 52, 56 (1940)). Although the statute does not define the point of accrual, in legal malpractice cases . . . the date that the statute of limitations begins to run is determined by applying the discovery rule. ***John Kohl & Co. P.C. v. Dearborn & Ewing***, 977 S.W.2d 528, 532 (Tenn. 1998); ***Shadrick v. Coker***, 963 S.W.2d 726, 733 (Tenn. 1998).

> This Court previously summarized Tennessee's discovery rule in ***John Kohl & Company P.C. v. Dearborn & Ewing***:

>> Under this rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant.
>> In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct. An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. An actual injury may also take

- 10 -

the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act. However, the injury element is not met if it is contingent upon a third party's actions or amounts to a mere possibility.

The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury. Accordingly, the statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date— whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. We have stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. Rather, the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct. It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial. A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims.

*Kohl*, 977 S.W.2d at 532-33 (citations and internal quotation marks omitted).

*Story v. Bunstine*, 538 S.W.3d 455, 463-64 (Tenn. 2017). In applying the discovery rule, the trial court held that Mr. Abdou's cause of action accrued, at latest, on April 21, 2021, when the agreed order of partial dismissal was entered. Thus, the trial court held that Mr. Abdou's complaint, which was filed on February 20, 2023, was barred by the one-year statute of limitations. Specifically, the trial court's order states:

The first itemization of misconduct was the entry of the Agreed Order of Partial Dismissal, which was entered on 04/21/21, and the statute of limitations with respect to this allegation according to the Court accrued on the date of entry. The statute is not tolled because [Appellant] failed to understand the term "with prejudice." The Court finds the [Appellant] was charged with constructive meaning of the term because he was represented by counsel at the time. *Smith v. Israel*, No. M2011-00145-COA-R3CV, 2011 WL 5184030, at *4 (Tenn. Ct. App. Oct. 31, 2011). The Court finds that the [Appellees] did not conceal some facts.

Mr. Abdou first contends that the trial court erred in undertaking a "fact-intensive analysis" in determining the correct date that the statute of limitations began to run. From our review, the trial court did not veer outside the amended complaint in its discovery-rule analysis. It is well-settled that, in addressing whether a statute of limitations has run for purposes of a motion to dismiss, a trial court may undertake a discovery-rule analysis. *See, e.g., Doe v. Catholic Bishop for the Diocese of Memphis*, 306 S.W.3d 712 (Ct. App. Tenn. Sept. 16, 2008), *perm. app. denied* (Tenn. March 16, 2009) (applying the discovery rule analysis in the context of a motion to dismiss).

Turning to the amended complaint, Mr. Abdou states that

[Appellees] sent the "Agreed Order of Partial Dismissal" on April 21, 2021, with adding a legal term to each dismissal claim "with prejudice" that has never been mentioned to the [Appellant] at any emails or phone calls, or the final drafted letter by Mr. Brazil, also. Mr. Brazil and Mr. Clark didn't explain the legal meaning of "with prejudice" to their client at all. Please note that "Agreed Order of Partial Dismissal" was sent and rushed to be signed in the same date on April 21, 2021.

By his own averments, Mr. Abdou received actual notice of the agreed order on April 21, 2021, when Appellees sent it to him. Having received the document, Mr. Abdou was charged with reading it. If there were terms in the order that Mr. Abdou did not understand, it was incumbent on him to contact his attorneys to explain the terms or to otherwise research the question himself. *Story*, 538 S.W.3d 455, at 464 ("Under the theory of constructive knowledge . . . the statute may begin to run . . . whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury."); *Smith v. Hauck*, 469 S.W.3d 564, 571 (Tenn. Ct. App. 2015), *perm. app. denied* (Tenn. July 20, 2015) (citations omitted) ("Constructive notice is notice that is 'implied or imputed by operation of law'. . . . It arises 'from the existence of facts and circumstances that a party [has] a duty to take notice of[.]'").

Having received the agreed order of dismissal on April 21, 2021, Mr. Abdou's argument that his cause of action accrued after Mr. VanAusdall informed him of the

meaning of "with prejudice" is unavailing. As this Court has explained:

> As long as the client is aware of the fact that the court has ruled against his or her rights or interests, arguably due to the lawyer's mishandling of the case, then it matters not how counsel may try to downplay or 'spin' the bad result. At that point the client is aware of the fact of injury. For statute of limitations purposes, that awareness is not negated by the lawyer's assurances that the court rendering the adverse order got the law wrong. Nor does it matter that the lawyer states that he or she believes that an appellate court will reverse the adverse order. As we have previously said, "[W]e do not believe that reliance upon erroneous legal advice can operate to toll the statute of limitations," inasmuch as the discovery rule relating to injury only applies to matters of fact unknown to a prospective plaintiff, not to matters of law.

*Cherry v. Williams*, 36 S.W.3d 78, 86 (Tenn. Ct. App. 2000), *perm. app. denied* (Tenn. Dec. 11, 2000) (quoting *Spar Gas, Inc. v. McCune*, 908 S.W.2d 400, 404 (Tenn. Ct. App. 1995)).

In view of the foregoing and taking the averments in Mr. Abdou's amended complaint as true, we agree that the statute of limitations on the claims arising from Appellees' alleged failure to inform Mr. Abdou concerning the meaning of the term "with prejudice" accrued, at latest, on April 21, 2021, when he received the agreed order of partial dismissal (the same day it was entered). As such, Mr. Abdou's February 20, 2023 complaint is barred by the one-year statute of limitations.

## V. Conclusion

For the foregoing reasons, the trial court's order dismissing Appellant's lawsuit is affirmed. Appellant's motion to strike Appellees' reply brief is granted. Appellant's motion to consider additional facts is denied, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Rimon Abdou. Execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE